IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 16, 2010 Session

## GLENDA HAMPTON v.
## NORTHWEST TENNESSEE HUMAN RESOURCE AGENCY

Direct Appeal from the Circuit Court for Carroll County
No. 08-CV-24     Donald E. Parish, Judge

No. W2009-02668-COA-R3-CV - Filed July 13, 2010

This is a personal injury case. The Appellant/Defendant's employee backed a van into a vehicle which the Appellee/Plaintiff was driving. Until the accident, the Plaintiff had not had any problems with her right shoulder. The morning after the accident the Plaintiff had pain and soreness in her shoulder. She was treated by three different orthopedic surgeons and ultimately had arthroscopic right shoulder surgery. The parties stipulated to liability. However, the Defendant disputed causation. A bench trial was held and the trial court found that the accident caused the Plaintiff's shoulder injury which necessitated the shoulder surgery. Defendant appealed from the trial court's judgment. We affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed.**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J.,W.S., and DAVID R. FARMER, J., joined.

Robert O. Binkley, Jr. and James V. Thompson, Jackson, Tennessee, for the appellant, Northwest Tennessee Human Resource Agency.

Ricky L. Boren, Jackson, Tennessee, for the appellee, Glenda Hampton.

## OPINION

This lawsuit stems from an automobile accident that occurred on April 24, 2007. On that day, Appellee, Glenda Hampton ("Ms. Hampton") was driving a Ford Taurus for her employer, Tri-County Transportation. She was driving her passenger, Ms. Effie Rivers, to a doctor's appointment. Upon arriving at the doctor's office, Ms. Hampton encountered traffic congestion near the entrance. Ms. Hampton pulled behind a van and waited for the traffic to clear at the entrance. While waiting, the van which they were parked behind, began

to back up. Appellant, Northwest Tennessee Human Resource Agency ("NTHRA") owned the van and it was being driven by Michael Ridgley. In backing up, the van collided with the car driven by Ms. Hampton. It was a low speed collision and resulted in a cracked headlight on Ms. Hampton's car and a dent in the van's rear bumper. Ms. Hampton saw the impending collision and braced herself against the steering wheel. Prior to this accident, Ms. Hampton had not had any problems with her right shoulder.

Ms. Hampton did not have pain immediately after the accident. However, beginning the next day, she had pain and soreness in her right shoulder which gradually worsened over the next ten days. On May 4, 2007, she was seen by her family physician, Dr. Toby Hampton. Dr. Hampton saw Ms. Hampton twice and provided her with pain medication which did not relieve her pain. Ms. Hampton was then referred to Dr. Michael Cobb, an orthopedic surgeon, by her worker's compensation insurance carrier. Dr. Cobb saw her on August 28, 2007 and ordered physical therapy. According to Ms. Hampton the therapy would help some, but the pain would always come back. Dr. Cobb ordered an MRI which was done on October 31, 2007. The MRI revealed a partial tear of the rotator cuff along with degenerative changes and a possible labral tear of the shoulder socket. Dr. Cobb opined that Ms. Hampton suffered from a shoulder strain. Ms. Hampton was also seen by Dr. Mike Smigielski at the request of her worker's compensation insurance carrier. Dr. Smigielski diagnosed a muscle strain, opined that the car accident could not be the cause of more serious shoulder conditions, and that a rotator cuff tear could become symptomatic by subsequent trauma. During this treatment, Ms. Hampton was forced to quit her job with Tri-County Transportation due to the pain in her shoulder.

Ms. Hampton was then seen by Dr. Apurva Dalal on October 14, 2008 because her pain had not improved. Dr. Dalal diagnosed her with a partial rotator cuff tear. He initially gave her an injection of cortisone. This injection relieved her pain, however, it returned. On March 25, 2009, Dr. Dalal performed an arthroscopic right shoulder surgery on Ms. Hampton to repair the tear of the labrum and the rotator cuff, to excise the distal clavicle and to remove the subacromial bursa. Dr. Dala opined that the car accident caused the shoulder injuries which necessitated the treatment he provided.

On April 22, 2008, Ms. Hampton filed a complaint against NWTHRA alleging negligence.[1] NWTHRA filed an answer on July 10, 2008. Prior to trial, the parties stipulated to liability. Also, the parties stipulated that the medical expenses were reasonable and necessary. However, NWTHRA disputed whether the shoulder surgery was causally related to the accident.

---

[1]Ms. Hampton also named the driver, Mr. Ridgely as a defendant. However, the claim against Mr. Ridgely was dismissed on July 15, 2008.

A bench trial was held on November 20, 2009. Ms. Hampton was the only witness to testify live at trial. The parties entered into evidence the depositions of Dr. Cobb, Dr. Smigielski and Dr. Dalal. Also the parties entered into evidence Dr. Hampton's medical records, the final judgment and ruling in *Effie Rivers v. Northwest TN Human Resource Agency* – the lawsuit brought by Ms. Hampton's passenger, Ms. Hampton's medical expense lists, a letter from Ms. Hampton's current employer detailing her earnings, a life expectancy table, copies of lawsuits filed against Dr. Cobb and Dr. Smigielski by Ms. Hampton's attorneys, and transcripts of the testimony of the van driver and another witness from the *Rivers* trial.

Following the conclusion of proof, the trial court rendered judgment in favor of Ms. Hampton and awarded her damages in the amount of $102,552.40. The trial court made several specific findings of credibility. First, the trial court found Dr. Cobb not to be credible and that his testimony evidenced bias. The trial court also noted that it accorded Dr. Smigielski's testimony less weight than the opinions Dr. Dalal. Finally, the trial court found Ms. Hampton to be "a credible historian and a credible witness." The trial court found that Ms. Hampton had no shoulder symptoms prior to the accident and had significant symptoms after the accident. The trial court further found that "it is likely some arthritic changes were present before the accident,...[but that] the trauma of the accident caused them to become symptomatic and later to require surgery." The trial court then found that Ms. Hampton had a thirteen percent impairment to her body as a whole and permanent physical restrictions which affect her daily activities. The trial court also found that her injury will affect future employment. Based on its finding that the surgery was causally related to the accident, the trial court awarded Ms. Hampton $50,552.40 in medical expenses which the parties had stipulated to. The trial court also awarded Ms. Hampton $20,000 for past and future pain and suffering; $20,000 for permanent disability; $2,000 for loss of the pleasures and enjoyments of life; and $10,000 for lost wages and loss of earning capacity. A final judgment reflecting these decisions was entered on December 2, 2009.

NTHRA filed a notice of appeal on December 16, 2009. It raises two issues for our review:

1.      Whether the April 24, 2007, accident caused a shoulder joint pathology requiring surgery?
2.      Whether the damage award is excessive?

**Standard of Review**

Because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial

-3-

court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d). With respect to the trial court's conclusions on matters of law however, our review is *de novo* with no presumption of correctness. *See Bowden v. Ward,* 275 S.W.3d 913, 916 (Tenn.2000); *Nash-Putnam v. McCloud,* 921 S.W.2d 170, 174 (Tenn. 1996); Tenn. R. App. P. 13 (d). Furthermore, when the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses and their manner and demeanor while testifying is in a far better position than this Court to decide those issues. See *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App.1997). The weight, faith, and credit to be given to any witness' testimony lies, in the first instance, with the trier of fact, and the credibility accorded will be given great weight by the appellate court. Id.; see also *Walton v. Young*, 950 S.W.2d 956, 959 (Tenn.1997). "If the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary." *Heffington v. Heffington*, No. M2009-00434-COA-R3-CV, 2010 WL 623629 (Tenn. Ct. App. Feb. 19, 2010). However, "[w]hen the issues involve expert medical testimony that is contained in the record by deposition, determination of the weight and credibility of the evidence necessarily must be drawn from the contents of the depositions, and the reviewing court may draw its own conclusions with regard to those issues." *Foreman v. Automatic Sys., Inc.,* 272 S.W.3d 560, 571 (Tenn. 2008)(citing *Orrick v. Bestway Trucking Inc.*, 184 S.W.3d 211, 216 (Tenn. 2006)).

## Analysis

### *Causation*

A negligence claim requires proof of the following elements: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care that amounts to a breach of that duty, (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause. *Hale v. Ostrow,* 166 S.W.3d 713, 716 (Tenn. 2005); *Coln v. City of Savannah*, 966 S.W.2d 34, 39 (Tenn. 1998). In this case, the only disputed element is causation. "No claim for negligence can succeed in the absence of" proof of causation. *Kilpatrick v. Bryant*, 868 S.w.2d 594, 598 (Tenn. 1993). "Causation, or cause in fact, means that the injury or harm would not have occurred 'but for' the defendant's negligent conduct." *Id.* (citations omitted). Causation is a question of fact, which we review with a presumption of correctness and will not overturn the trial court's finding unless the evidence preponderates against it. *Haines v. Henry County. Bd. Of Education*, No. W2008-02532-COA-R3-CV, 2010 WL 457502, at *7 (Tenn. Ct. App. Feb. 11, 2010)(citations omitted).

At trial, the only live testimony received by the trial court was from Ms. Hampton. Ms. Hampton testified that she did not have any problems with her shoulder prior to the accident. She testified that the morning after the accident, her shoulder was sore and the pain gradually got worse over the next ten days. Moreover, Ms. Hampton testified that the soreness in her shoulder continued everyday until the surgery and that the surgery improved her pain, motion and strength. On cross examination, Ms. Hampton admitted that she said she was fine immediately following the accident. She also admitted that she did not have pain in her shoulder everyday, but explained that the tenderness and soreness were present everyday from the accident until the surgery.

The trial court found Ms. Hampton to be a credible witness. We have reviewed the record and we do not find clear and convincing evidence to contradict the trial court's findings. ***Heffington v. Heffington***, No. M2009-00434-COA-R3-CV, 2010 WL 623629 (Tenn. Ct. App. Feb. 19, 2010) Accordingly, we affirm the trial court's findings that Ms. Hampton did not have problems with her shoulder prior to the accident, that the problems continued until she had shoulder surgery, and that the surgery alleviated the problems she was having.

The trial court also reviewed the deposition testimony of Ms. Hampton's treating physicians. Because the doctors testified by depositions, we may make our own findings of credibility. ***Foreman v. Automatic Sys., Inc.,*** 272 S.W.3d 560, 571 (Tenn. 2008). Dr. Cobb, the first orthopedic surgeon that treated Ms. Hampton, testified that he first saw her on August 27, 2007. He testified that at this time Ms. Hampton had pain in her shoulder and neck, along with pain when moving her shoulder, but that she had no limitation in moving her shoulder and no sign of rotator cuff weakness or instability. Dr. Cobb testified that he saw Ms. Hampton again one month later, on September 26, 2007. According to his testimony, Ms. Hampton still had pain in her shoulder, but had full motion. He testified that at this visit Ms. Hampton would "guard intermittently" and explained that this meant she was probably exaggerating her symptoms. Dr. Cobb testified that he saw Ms. Hampton again on October 25, 2007 and testified that at this visit Ms. Hampton still had pain and "guarded motion." At this visit, Dr. Cobb ordered an MRI. Dr. Cobb testified that the MRI was performed on October 31, 2007 and showed a partial tear of the rotator cuff along with degenerative changes and a possible labral tear of the shoulder socket. However, Dr. Cobb explained that a rotator cuff tear was common in people over the age of thirty or forty, and that there was no clinical correlation to the finding of a torn rotator cuff. Dr. Cobb further testified that the accident may have caused a mild sprain, but there was no way it resulted in a rotator cuff tear.

Then trial court found Dr. Cobb not to be credible. When asked about his initial thoughts on Ms. Hampton, Dr. Cobb referred to the accident as the "so-called accident." Dr. Cobb also accused Ms. Hampton of exaggerating her symptoms. He then referred to the tear of the rotator cuff as found by the radiologist in the MRI, as a "so-called tear." Dr. Cobb also testified that Ms. Hampton's counsel's clientele was more likely to fake their symptoms. Moreover, at the time of his deposition, Dr. Cobb was being sued by another client of Ms. Hampton's counsel. We have made our own independent review of the testimony of Dr. Cobb. Considering his testimony, along with the fact that Ms. Hampton consistently complained of pain and soreness in her shoulder, and that a rotator cuff tear was found and surgically repaired, we believe that Dr. Dalal, having performed the surgery, is in a better position to assess her condition.

Dr. Smigielski, another of Ms. Hampton's treating orthopedic surgeons, also testified by deposition. He testified that he saw Ms. Hampton on March 3, 2008, and that at that time, Ms. Hampton was having pain some days and not others, along with intermittent numbness and tingling, and that she had normal motion but that she was tearful when she moved her shoulder. He testified that the October 2007 MRI report indicated a partial tear to the rotator cuff, but explained that fifty percent of the people Ms. Hampton's age will have some tears. Dr. Smigielski testified that the 2008 MRI was similar to the 2007 MRI. In his opinion, surgery would not have been beneficial to Ms. Hampton at the time he saw her. Dr. Smigielski testified that the accident probably caused a muscle strain. However, he did admit that a preexisting partial tear could become symptomatic with trauma. Further, he admitted that a preexisting rotator cuff tear or a labral tear could be aggravated by an accident like Ms. Hampton's.

Finally, Dr. Dalal, another treating orthopedic surgeon and the surgeon that performed the surgery, testified by deposition. He testified twice through deposition, once before surgery and once after surgery. Prior to the surgery, Dr. Dalal testified that he had seen Ms. Hampton on October 14, 2008 and that she had stated she had pain in her shoulder. He testified that the 2007 MRI showed a torn rotator cuff and some arthritis. Dr. Dalal testified that he treated Ms. Hampton on October 14, 2008 by giving her a shot of cortisone. He also ordered another MRI. He further testified that he saw her two weeks later and that her pain and mobility were better, but that more likely than not, she would need surgery. Dr. Dalal testified that a rotator cuff tear and a torn labrum were permanent conditions and that he instructed Ms. Hampton to avoid lifting, pulling, pushing and overhead work. As of November 11, 2008, in Dr. Dalal's opinion all of Ms. Hampton's problems began after the accident, and he believed that somehow during the accident, she jerked her shoulder causing the rotator cuff and labrum tears.

Dr. Dalal's deposition was taken again on October 26, 2009, after the surgery. At this time, Dr. Dalal testified that he saw Ms. Hampton again on January 26, 2009 and that Ms. Hampton could not lift her arm and was in alot of pain. During this visit, Ms. Hampton expressed a desire to try to surgically repair the shoulder as Dr. Dalal had suggested. Dr. Dalal testified that he performed a right shoulder arthoscopy on March 25, 2009 and that during this surgery he found a significant tear of the labrum and a tear in the rotator cuff. He testified that he repaired the tear of the labrum and the rotator cuff, excised the distal clavicle and removed the subacromial bursa. Dr. Dalal testified that Ms. Hampton is doing extremely well post surgery, and that her pain, motion and strength have improved. In his opinion, Dr. Dalal stated that he believed the original injury resulted in the need for shoulder surgery.

After reviewing the record as a whole we find that the evidence does not preponderate against the trial court's finding that the April 24, 2007 accident was causally related to Ms. Hampton's ensuing shoulder surgery and associated expenses.

*Damages*

NTHRA also contends that the trial court's award of damages is excessive. After finding the shoulder surgery was causally related to the accident, the trial court awarded Ms. Hampton damages in the amount of $102,552.40. This was comprised of $50,552.40 for medical expenses as stipulated by the parties, $20,000.00 for past and future pain and suffering, $20,000.00 for permanent disability, $2,000.00 for loss of the pleasures and enjoyments of life, and $10,000.00 for lost wages and lost earning capacity.

"Whether the trial court has utilized the proper measure of damages is a question of law that we review de novo." *Memphis Light, Gas & Water Div. v. Starkey*, 244 S.W.3d 344, 352 (Tenn. Ct. App. 2007) (quoting *Beaty v. McGraw*, 15 S.W.3d 819, 829 (Tenn. Ct. App. 1998); see also *Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005). The amount of damages awarded, however, is a question of fact so long as the amount awarded is within the limits set by the law. *Id.* Thus, in a non-jury case such as this, we review the amount of damages awarded by the trial court with a presumption of correctness, unless the preponderance of the evidence demonstrates otherwise. See Tenn. R. App. P. 13(d). "[D]amages need not be proven with mathematical precision, [but] the proof of damages must be concrete and definite enough to enable the trier-of-fact to make a reasonable assessment of the claimant's damages." *Henley v. Amacher*, No. M1999-02799-COA-R3-CV, 2002 WL 100402, at *11 (Tenn. Ct. App. Jan. 28, 2002). Pain and suffering damages

compensate a person for past and future "physical or mental discomfort caused by an injury" including anguish, distress, fear, humiliation, grief, shame, or worry." ***Overstreet v. Shoney's Inc.***, 4 S.W.3d 694, 715 (Tenn. Ct. App. 1999). Damages for permanent injury compensate a person for the inconvenience or loss of physical vigor which the person must endure for the rest of his life due to an injury from which he cannot recover. ***Id.*** "Damages for lost earning capacity are measured not by the amount of the plaintiff's lost wages but by the extent of impairment to the plaintiff's ability to earn a living." ***Graves v. Jeter***, No. W2003-02871-COA-RS-CV, 2004 WL 3008871, at *4 (Tenn. Ct. App. Oct. 11, 2004). "Damages for loss of enjoyment of life compensate the injured person for the limitations placed on his or her ability to enjoy the pleasures and amenities of life." ***Overstreet v. Shoney's Inc.***, 4 S.W.3d at 715-16.

We have reviewed the record and find that the trial court's award of damages is within the range of reasonableness. As to the damages for pain and suffering, Ms. Hampton testified that she had pain and soreness in her shoulder from the day after the accident until the surgery; in other words for almost two years. She testified that while the surgery did alleviate most of the pain, she still had some pain. In regard to permanent disability, Dr. Dalal opined that Ms. Hampton had a permanent medical impairment rating of twenty-two percent to the upper extremity or thirteen percent to the body as a whole. Dr. Dalal testified that in the future, Ms. Hampton would be restricted from lifting weight over twenty-five pounds and from lifting weight over ten pounds overhead. Also, according to Dr. Dalal, Ms. Hamptom must avoid repetitive pushing or pulling, and manual labor. Ms. Hampton was fifty three years old at the time of trial, has a limited education and would never be able to work in a job which required her to use her right arm for eight hours. In the past Ms. Hampton had worked in a factory and in a job assisting the elderly and disabled, neither of which she could do with her shoulder now. Regarding the award for loss of pleasures and enjoyment of life, Ms. Hampton testified that prior to the surgery she was extremely limited in what she could do. She admitted that she could still fish, but could not do much gardening, two things which she enjoyed doing prior to the accident. She testified that she can do some yard work, but she must limit herself and cannot push a lawnmower. As to lost wages, Ms. Hampton testified that while she was being treated she was forced to quit her job due to the pain in her shoulder. Since being forced to leave her job, she has not been able to obtain full-time employment. Further, because of her injuries, her employment opportunities in the future are limited. Considering the record as a whole we do not find that the evidence preponderates against the trial court's award of damages. Consequently, we affirm the trial court's finding that Ms. Hampton was entitled to $102,552.40 in damages.

**Conclusion**

The decision of the trial court is affirmed. Costs of this appeal are taxed to the Appellant, Northwest Tennessee Human Resource Agency and its surety for which execution may issue if necessary.

 

_____
J. STEVEN STAFFORD, JUDGE