# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### April 16, 2013 Session

## GARY POWERS v. SHERRY DENISE POWERS

### Direct Appeal from the Chancery Court for Gibson County
### No. 14307    George R. Ellis, Chancellor

---

### No. W2012-01763-COA-R3-CV - Filed April 30, 2013

---

This case involves the construction of the parties' marital dissolution agreement. Father appeals the transfer of his case from circuit court to chancery court, the trial court's dismissal of his petition for a declaratory judgment, and the trial court's ruling finding him in breach of the post-majority support provision of the marital dissolution agreement and awarding Mother attorney fees. We reverse as to the attorney fee award, but affirm as to the remainder.

### Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Reversed in Part; and Remanded

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J.,W.S., and DAVID R. FARMER, J., joined.

David W. Camp, Jackson, Tennessee, for the appellant, Gary Powers.

Terri Smith Crider, Humboldt, Tennessee, for the appellee, Sherry Denise Powers.

### OPINION

### I. Background

Appellant Gary Powers ("Father") and Appellee Sherry Denise Powers ("Mother") were married in 1990. The parties had one daughter, Brooke, born in 1993. The parties were divorced in 1999 pursuant to an agreed marital dissolution agreement ("MDA") entered in the Gibson County Chancery Court. Under the MDA, Father agreed to pay one-half of Brooke's college expenses, including "tuition, books, living expenses, etc." The parties' daughter reached the age of majority in April of 2011 and began to attend college in the fall of 2011. Father began receiving bills for what Mother deemed college-related expenses around July of 2011,which was after Brooke attained majority. Father paid a portion of the

bills. Father was never consulted before the bills were incurred; instead, invoices were simply mailed to him.  In the summer of 2011, however, Father was attempting to start a new business and had no income. Father alleges that he was sent bills that included costs for health related expenses, a television, and home accents, which he argued were not "living expenses" pursuant to the MDA.

Based on Father's belief that he was being required to pay expenses that were not in accordance with the language of the MDA, Father filed a petition for a declaratory order in the Gibson County Circuit Court on September 28, 2011. Specifically, Father requested that the trial court "issue a declaration that the provision related to college related expenses contained within the marital dissolution agreement is invalid" and that the "college related expenses language contained within the marital dissolution agreement is invalid as the parties' daughter is over the age of eighteen (18) and has graduated from high school." Mother answered Father's petition and filed a counter-complaint for breach of contract on October 27, 2011. On November 28, 2011, Mother filed a motion to transfer the case to the Gibson County Chancery Court. A hearing on Mother's motion was held on January 3, 2012. The Circuit Court subsequently transferred the case to Chancery Court by order of January 27, 2012.

The case proceeded to trial before the Chancery Court on March 6, 2012. Father testified as to his precarious financial situation and asked that the trial court clarify what he was required to pay pursuant to the MDA. Father also testified as to some expenses he had paid prior to the parties' daughter graduating from high school, including college visits. Father's current wife also attempted to testify as to some expenses that were paid prior to the parties' daughter reaching the age of majority, including costs for college entrance exams and medical expenses. Father's current wife testified that some of these expenses were paid voluntarily, after requests from Mother. However, when Father's wife attempted to elaborate on other expenses that she asserted were paid (despite not qualifying as college-related expenses),  Mother's attorney objected to the relevance of such testimony. The trial court ruled that testimony of expenses voluntarily paid while Brooke was still a minor was not relevant to the issue presented. When Father requested to make an offer of proof, the trial court denied the request, noting that both Father and his wife had already testified to some extent about these expenditures and that the present testimony was from a witness who was not a party to the contract.

Mother testified, in contrast, that she does not request that Father pay many of Brooke's expenses, including car insurance or car payments. Instead, she testified that she considered the "living expenses" under the contract to include rent, food, and gasoline, as

well as certain "start-up" costs needed to furnish Brooke's apartment.[1] Mother testified that she had asked Father and his current wife to pay some of Brooke's medical expenses, and that Father's current wife voluntarily undertook to pay some of those expenses.[2] Mother further testified that although Father paid some of the bills prior to Brooke entering college, Father had not paid any post-majority support since September 2011. Mother submitted itemized expense worksheets outlining the costs she had incurred since Brooke reached majority that had not been paid by Father and asked that she be awarded damages of $4,128.79.

At the conclusion of trial, the trial court orally ruled that the post-majority support provision of the MDA was valid and enforceable. Accordingly, the trial court dismissed Father's Complaint for a Declaratory Judgment. The trial court also concluded that the expenses submitted for reimbursement by Mother were reasonable and were required to be paid by the plain language of the contract. Consequently, the trial court found Father in breach of the MDA and awarded Mother a judgment for the expenses owed pursuant to the MDA, totaling $4,128.79. Further, the trial court clarified the term "living expenses" with regard to the expenses owed pursuant to the MDA, concluding that such term should only include rent, food, and gasoline. The trial court also ruled that in the future, Mother would submit "an itemization with attached bills" to Father, and that Father would reimburse Mother for those expenses within thirty days. The trial court additionally awarded Mother her attorney fees. On July 23, 2012, the trial court entered an order memorializing its oral ruling.

Father appeals, raising the following issues:

1.    Whether the trial court erred in transferring the matter from the Circuit Court of Gibson County, Tennessee to the Chancery Court of Gibson County, Tennessee?
2.    Whether the trial court erred in ruling that Father could not present evidence of prior bills paid under the post-majority support provision of the contract
3.    Whether the trial court erred in its ruling?

**II. Analysis**

---

[1] Under the contract, Father is also required to pay one-half of the parties' daughter's tuition and books. Brooke's tuition is paid through an academic scholarship. However, the scholarship requires a certain amount of volunteer work for the university, which prevents Brooke from seeking other employment.

[2] At the time of the trial, Mother testified that Brooke was suffering from a form of cancer.

Before we turn to the substantive issues in this case, we address two preliminary issues raised by Father. Father's first issue concerns the Gibson County Circuit Court's decision to transfer the case to the Gibson County Chancery Court. Father asserts that the Circuit Court erred in transferring the case when it is undisputed that the Circuit Court had jurisdiction over both the declaratory judgment action and the breach of contract counter-complaint. Mother does not dispute that the Circuit Court possessed concurrent jurisdiction over both matters, but argues that the Chancery Court was the more appropriate forum because the MDA was entered in Chancery Court and the Chancery Court traditionally deals with domestic matters in Gibson County. After thoroughly reviewing the record, however, we can find no evidence that Father objected to the transfer in the trial court. The failure to raise an issue in the trial court will ordinarily operate as a waiver of that issue on appeal. *Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 511 (Tenn. 2010); *Black v. Blount*, 938 S.W.2d 394, 403 (Tenn.1996). From what we can discern from the record,  Mother filed her motion to transfer on November 28, 2011. The hearing on the motion was not heard until January 3, 2011.  The trial court subsequently entered an order allowing the transfer on January 27, 2012. However, Father did not file a written response opposing the motion. In addition, Father included no transcript or statement of the evidence from the hearing showing that he objected to the transfer. Thus, nothing in record on appeal indicates that Father timely objected to Mother's request. It is well-settled that the appellant bears the burden to prepare a record that conveys a fair and accurate account of what transpired in the trial court with regard to those issues that are the bases of the appeal.  *In re M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App. 2005); *Nickas v. Capadalis*, 954 S.W.2d 735, 742 (Tenn. Ct. App. 1997) (quoting *State v. Boling*, 840 S.W.2d 944, 951 (Tenn. Crim. App. 1992)). Because Father presented no evidence indicating that he objected to the transfer in the trial court, this issue is waived on appeal.

Father's next preliminary issue concerns the trial court's refusal to hear evidence from Father's current wife concerning payments made by Father prior to Brooke reaching the age of majority. The trial court ruled that such testimony was not relevant. The Tennessee Supreme Court recently clarified the standard of review for questions regarding the admissibility of evidence: "The trial court's decision to admit or exclude evidence will be overturned on appeal only when it applies an incorrect legal standard, or reaches a decision which is against logic or reasoning [and] causes an injustice to the party complaining." *Mercer v. Vanderbilt Univ. Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004) (quoting *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)) (internal quotation marks omitted); *see also In re Estate of Smallman*, --- S.W.3d ----, 2013 WL 682810 (Tenn. 2013). We have previously held that the abuse of discretion standard is a "high" standard of review.  *Porter v. Porter*, No. M2012–00148–COA–R3–CV, 2013 WL 313838, at *14 (Tenn. Ct. App. 2013) (Kirby, J., concurring) (declining to reverse the trial court's ruling only because of the "high

standard" required under abuse of discretion review). This Court explained the abuse of discretion standard in *State of Tennessee ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000):

> A party seeking to have a lower court's holding overturned on the basis of abuse of discretion undertakes a heavy burden. The abuse of discretion standard is intended to constrain appellate review and implies "less intense appellate review and, therefore, less likelihood of reversal.". . . . The fact that a decision is discretionary with a trial court necessarily implies that the trial court has a choice of alternatives among a range of acceptable ones; the reviewing court's job is to determine whether the trial court's decision is within the range of acceptable alternatives, given the applicable legal principles and the evidence in the case.

*Id.* at 193–94 (citations omitted).

Thus, the burden is on Father to show that the trial court abused its discretion by reaching a decision against logic or reasoning, or that it applied an incorrect legal standard. From our review of Father's brief, however, Father fails to cite any law to support his argument that the trial court abused its discretion in limiting the testimony at issue. The failure "to cite to any authority . . . regarding [a] position on appeal" constitutes a waiver of the issue." *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006)."Courts have routinely held that the failure . . . to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue." *Bean v. Bean*, 40 S.W.3d 52, 55–56 (Tenn. Ct. App. 2000). Because of the heavy burden of the abuse of discretion standard of review, we conclude that Father's failure to cite any authority to support his argument on this issue is insufficient to meet his burden.

We next turn to the alleged errors with the trial court's ruling. The substantive issues in this case were tried by the trial court without a jury. We review the trial court's findings of fact *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). No presumption of correctness, however, attaches to the trial court's conclusions of law and our review is *de novo*. *Blair v. Brownstone*, 197 S.W.3d 681, 684 (Tenn. 2006) (citing *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000)). The interpretation of a written contract, including a marital dissolution agreement, is a matter of law and this Court reviews such questions *de novo* affording the trial court's conclusions no presumption of correctness. *Simpkins v. Blank*, No. M2002-02383-COA-R3-CV, 2003 WL 23093849, at *3 (Tenn. Ct. App. Dec. 30, 2003) (citing *Gray v. Estate of Gray*, 993 S.W.2d

59, 63 (Tenn. Ct. App. 1998)).

The substantive issues in this case concern Father's contractual obligation to provide post-majority support for his daughter in the form of paying one-half of her college-related expenses. As explained by this Court:

> While it is generally true that a parent cannot be ordered by the courts to pay child support for an adult child, ***Blackburn v. Blackburn***, 526 S.W.2d 463, 465 (Tenn. 1975); ***Garey v. Garey***, 482 S.W.2d 133, 135 (Tenn. 1972), a party to a divorce may by agreement obligate himself or herself beyond the support duties imposed by law. Such a provision in an agreement constitutes "a contractual obligation outside the scope of the legal duty of support during minority and retains its contractual nature, although incorporated in a final decree of divorce." ***Penland v. Penland***, 521 S.W.2d 222, 224–25 (Tenn. 1975); Blackburn, 526 S.W.2d at 465. Any voluntarily assumed obligation exceeding the minimum child support required by statute is based on the parties' contract, enforceable as a contractual obligation, and controlled exclusively by the agreement. ***Haas v. Haas***, No. 02A01-9604-CV-00073, 1997 WL 194852, at *3 (Tenn. Ct. App. Apr. 22, 1997) (no Tenn. R. App. R. 11 application filed).

***Bryan v. Leach***, 85 S.W.3d 136, 151 (Tenn. Ct. App. 2001). The trial court concluded that Father's agreement to pay one-half of the parties' daughter's college-related expenses was a valid and enforceable contractual obligation and Father does not appeal that ruling. Instead, Father argues that the trial court erred in concluding that Father breached the contract for expenses when Mother failed to submit the expenses to him for payment prior to trial. Again, Father fails to cite any authority to support his argument that the trial court erred in requiring Father to pay these expenses, which the trial court concluded were required to be paid by the plain language of the MDA and were supported by itemized receipts introduced at trial. Accordingly, this issue is likewise waived. *See **ABN AMRO Mortg. Group, Inc. v. Southern Sec. Federal Credit Union***, No. W2011-00693-COA-R3CV, 2011 WL 5590320, at *4 (Tenn. Ct. App. Nov. 17, 2011) (citing ***Waters v. Farr***, 291 S.W.3d 873, 918 (Tenn. 2009)).

Father next argues that the trial court erred in dismissing Father's declaratory judgment petition while also clarifying the terms in the contract. As pointed out by Mother, however, Father's declaratory judgment petition did not seek a clarification of the terms in the contract, but rather requested that the trial court declare the entire post-majority support

clause in the MDA to be "null and void." As previously discussed, Father does dispute the trial court's ruling upholding the validity of the contractual language; therefore, we cannot conclude that the trial court erred in dismissing Father petition. With regard to the trial court's clarification of certain words in the MDA, we note that interpretation of the terms contained in a contract is a necessary component of any breach of contract action. *See generally* 11 <u>Williston on Contracts</u> § 30:2 (4th ed.) ("Interpretation of the language of a contract is a logical necessity."). Accordingly, the trial court did not err in defining the terms in the contract despite its decision to dismiss the declaratory judgment petition.

Father also argues that the trial court erred in dismissing his declaratory judgment petition, while also adding a requirement, not originally contained in the contract, requiring Father to remit payment to Mother within thirty days. Father correctly notes that "[a] parent's agreements to pay college expenses as well as to provide support beyond majority are contractual obligations for which the parent has no legal duty and which are not subject to modification by the courts." ***Bryan***, 85 S.W.3d at 151(citing ***Penland***, 521 S.W.2d at 224–25); *see also* ***Dorris v. Dorris***, No. 01A01-9304-CV-00170, 1993 WL 380778, at *2 (Tenn.Ct.App. Sept. 29, 1993) (no Tenn. R. App. P. 11 application filed) (the trial court has no statutory power to award child support beyond the age of majority and no continuing power to modify such support). We note, however, that "under the Restatement Second, if the parties have not reached agreement with respect to an essential term, the court may imply a term which is reasonable under the circumstances." 11 <u>Williston on Contracts</u> § 31:6 (4th ed.) (citing <u>Restatement (Second) of Contracts</u> § 204). As explained by the Restatement, "where there is in fact no agreement [as to an omitted term], the court should supply a term which comports with community standards of fairness and policy[.]" <u>Restatement (Second) of Contracts</u> § 204. The Restatement (Second) specifically references the addition of a term regarding the time for performance as such a term that may be supplied by the court. ***Id.*** As previously stated, Father does not take issue on appeal with the trial court's ruling that the post-majority support provision of the MDA is valid and enforceable. Nor does Father argue that the additional term supplied by the trial court is unreasonable, against the plain language of the MDA, or in contrast to the parties' expectations when drafting the agreement. Under these circumstances, it was appropriate for the trial court to supply the missing term:

> [T]he courts should be forthright in their approach and recognize that there are circumstances when the parties simply have not reached any agreement with regard to the alleged omitted term, that is, when interpretation reveals neither an express nor tacit understanding regarding a particular term. In these cases, the courts should supply a reasonable term, one that comports with generally accepted standards of fairness and public policy.

11 <u>Williston on Contracts</u> § 31:6. Accordingly, the trial court did not err in supplying the additional terms.

Finally, Father argues that the trial court erred in awarding Mother her attorney fees. "The allowance of attorney's fees is largely in the discretion of the trial court, and the appellate court will not interfere except upon a clear showing of abuse of that discretion." ***Taylor v. Fezell***, 158 S.W.3d 352, 359 (Tenn. 2005) (quoting ***Aaron v. Aaron***, 909 S.W.2d 408, 411 (Tenn. 1995)). To support his argument that the trial court abused its discretion in awarding Mother attorney fees, Father correctly asserts that our courts follow the rule that parties pay their own legal fees unless a contract, statute, or other recognized exception expressly authorizes otherwise. As explained by the Tennessee Supreme Court:

> Tennessee, like most jurisdictions, adheres to the "American rule" for award of attorney fees. ***John Kohl & Co. v. Dearborn & Ewing***, 977 S.W.2d 528, 534 (Tenn. 1998); ***Pullman Standard, Inc. v. Abex Corp.***, 693 S.W.2d 336, 338 (Tenn. 1985). Under the American rule, a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case. ***Taylor***, 158 S.W.3d at 359; ***John Kohl***, 977 S.W.2d at 534.

***Cracker Barrel Old Country Store, Inc. v. Epperson***, 284 S.W.3d 303, 308 (Tenn. 2009). It is undisputed that the MDA at issue contains no express provision related to attorney fees. Accordingly, attorney fees are not authorized by the contract in this case. *See id.* ("In the context of contract interpretation, Tennessee allows an exception to the American rule only when a contract specifically or expressly provides for the recovery of attorney fees.").

Mother argues, however, that because the issue in this case involves the support of the parties' daughter, attorney fees are authorized pursuant to statute. Mother relies on Tennessee Code Annotated Section 36-5-103(c), which states:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the

original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Thus, under Tennessee Code Annotated Section 36-5-103(c) "a parent may recover "reasonable attorney fees incurred in enforcing any decree for . . . child support.'" *Massey v. Casals*, 315 S.W.3d 788, 799 (Tenn. Ct. App. 2009). Mother, however, cites no cases in which this statute has been applied to an award of attorney fees in a case involving only the payment or non-payment of post-majority support, nor has our research revealed any such cases. Further, this Court has held that to uphold the award of attorney fees pursuant to Tennessee Code Annotated Section 36-5-103(c) "[t]he attorney's work in securing the award must ultimately inure to the benefit of the *minor* children." *Miller v. Miller*, 336 S.W.3d 578, 586 (Tenn. Ct. App. 2010) (emphasis added) (citing *Dalton v. Dalton*, 858 S.W.2d 324, 327 (Tenn. Ct. App. 1993)); *see also Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005) ("In cases involving the custody and support of children, . . . it has long been the rule in this State that counsel fees incurred on behalf of *minors* may be recovered when shown to be reasonable and appropriate.") (emphasis added) (quoting *Deas v. Deas*, 774 S.W.2d 167, 169 (Tenn. 1989)). Thus, attorney fees pursuant to Tennessee Code Annotated Section 36-5-103(c) are only appropriate when the legal fees are incurred on behalf of a minor child. There is no dispute in this case that the support at issue concerns an adult daughter of the parties who has reached the age of majority. Accordingly, Tennessee Code Annotated Section 36-5-103(c) does not authorize the award of attorneys fees in this case. Without any contractual or statutory authority supporting the award of attorney fees, we must conclude that the trial court erred in awarding Mother her attorney fees. The award of attorney fees is, therefore, reversed.

### III. Conclusion

The judgment of the Gibson County Chancery Court is affirmed in part, reversed in part, and remanded for all further proceedings as may be necessary and are consistent with this opinion. Costs of this appeal are assessed one-half to Appellant Gary Powers, and his surety, and one-half to Appellee Sherry Powers, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE