# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
September 9, 2004 Session

## ANGELA D. (FEZELL) TAYLOR v. DOUGLAS FEZELL

**Appeal by permission from the Court of Appeals, Eastern Division
Chancery Court for Greene County
No. 98000057     Thomas R. Frierson, II, Chancellor**

---

**No. E2002-02937-SC-R11-CV - Filed January 14, 2005**

---

We granted permission to appeal pursuant to Rule 11 of the Tennessee Rules of Appellate Procedure to determine whether the retained earnings of an S corporation should be treated as income to the sole or majority shareholder of the corporation for the purpose of calculating child support in accordance with the Tennessee Child Support Guidelines. We conclude that absent a showing that the retained earnings are excessive or that an obligor is actually manipulating his or her income, the retained earnings of an S corporation should not be imputed as income to the sole or majority shareholder in calculating a child support obligation. Because there was no showing in this case that the retained earnings were excessive or that the obligor-father manipulated the funds of the S corporation to reduce his child support obligation, we hold that the trial court and the Court of Appeals erred by imputing to him as income the company's retained earnings. Further, we hold that the lower courts erred by failing to include the economic value of the obligor-father's company car in its calculation of income. Finally, we hold that the trial court and the Court of Appeals erred by not granting the obligee-mother's petition to have the obligor pay her attorney's fees in this cause. Based on the foregoing, we reverse the judgment of the Court of Appeals and remand to the trial court for a determination of child support that is consistent with this opinion and for a determination of attorney's fees.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of
Appeals Reversed and Remanded to the Chancery Court for Greene County**

J. S. "STEVE" DANIEL, SP.J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

John P. Chiles, Kingsport, Tennessee, and Thomas F. Bloom, Nashville, Tennessee, for the appellant, Douglas W. Fezell.

C. Dwaine Evans, Morristown, Tennessee, for the appellee, Angela D. (Fezell) Taylor.

**OPINION**

I. Facts and Procedural History

On June 14, 1986, Douglas W. Fezell (Mr. Fezell) and Angela Daniels (Mrs. Fezell)[1] were married. The couple had two children: a daughter born on May 30, 1993, and a son born on April 15, 1995. The couple divorced in 1999. In their Marital Dissolution Agreement (MDA), Mrs. Fezell was designated as the primary residential custodian of the two minor children. The MDA also provided that Mr. Fezell was to have visitation time greater than the standard amount contemplated by the Tennessee Child Support Guidelines. In consideration of Mr. Fezell's additional visitation and the establishment of a trust fund for the children, the parties mutually agreed that Mr. Fezell would pay child support in the amount of $1,000.00 per month until July 31, 1999, with an increase to $1,300.00 in August 1999. The MDA also set forth the terms of the trust agreement and provided a method to calculate Mr. Fezell's contribution to the trust.

Pursuant to the Tennessee Child Support Guidelines,[2] Mr. Fezell's child support obligation was based, in part, on his income from Professional Vending Services (PVS). At the time of the divorce, Mr. and Mrs. Fezell were the sole shareholders of PVS, each owning a one-half interest. The parties agreed in the MDA that Mr. Fezell would continue to run PVS as the sole shareholder and president and that he would pay Mrs. Fezell $310,000.00 in exchange for her one-half interest in the company. Mr. Fezell completed the purchase of this stock and was the sole shareholder of the corporation at the time of the present litigation.

PVS buys, installs, and services vending machines and auxiliary equipment in various commercial locations. This business is very capital intensive, and to be competitive, PVS must purchase and maintain state-of-the-art vending equipment for its commercial users. PVS, from its inception until 2001, was registered with the State as an S corporation. An S corporation's income passes through that corporate entity to the individual shareholders in proportion to their respective stock ownership. This passing through of income takes place for federal income tax purposes, regardless of whether the earnings of the corporation are retained to enhance the corporation's capital position. Thus, the shareholders of an S corporation are required to pay taxes on their apportioned shares of the corporation's earnings, regardless of the actual sums they are paid. In 2001, following the divorce, Mr. Fezell changed the corporate status of the company from an S corporation to a C corporation. This change in corporate status resulted in the removal from Mr. Fezell's income for tax purposes of corporate earnings that had been retained by the corporation.

_____

[1]Although Angela Fezell has remarried and taken the surname "Taylor," we will refer to her in this opinion as Mrs. Fezell.

[2]This case involves the Tennessee Child Support Guidelines which were in effect when the events referred to in this case took place. We note, however, that new Income Shares Child Support Guidelines are effective January 18, 2005.

The record also demonstrates that Mr. Fezell has been furnished a leased Lexus automobile by PVS and has retained the full use of the vehicle, both during business and nonbusiness hours. PVS has been paying a monthly lease payment of $1,200.00 for Mr. Fezell's automobile.

On August 1, 2001, Mr. Fezell filed a post-divorce action seeking to increase his parenting time. He also sought a reduction in his child support payments and a determination that the trust agreement in the MDA be declared void. Mrs. Fezell responded with a counter-petition, asserting that Mr. Fezell had willfully failed and refused to fund the trust and that he had failed to pay the proper amount of child support in accordance with the Tennessee Child Support Guidelines. Additionally, Mrs. Fezell requested that Mr. Fezell be ordered to pay her attorney's fees in this cause. The trial court conducted a hearing on the various claims of the parties.

The trial court upheld the validity of the trust established for the minor children, found that Mr. Fezell had failed to properly calculate the trust contributions, and entered a judgment for those past-due contributions. The trial court denied Mr. Fezell's request for additional parenting time and Mrs. Fezell's request for attorney's fees. Further, the trial court increased Mr. Fezell's child support payment to $1,576.58 per month.

In calculating Mr. Fezell's child support obligation, the trial court first determined his income. In so doing, the trial court imputed to Mr. Fezell PVS's retained earnings as an S corporation. Although the court acknowledged that PVS was a capital-intensive business, it concluded that Mr. Fezell "maintain[ed] the ability and authority to control his annual salary, with the potential to manipulate his income by allowing the company to accumulate profits through retained earnings." The trial court also found that Mr. Fezell converted PVS from an S corporation to a C corporation for legitimate business purposes and on the advice of his accountant.

The trial court then averaged Mr. Fezell's income for the three years prior to trial, using Mr. Fezell's 1999, 2000, and 2001 individual federal income tax returns. The 1999 and 2000 returns showed the pass-through income of PVS which had been attributable to Mr. Fezell as sole shareholder of an S corporation. The 2001 tax return reflected wages paid to Mr. Fezell by the corporation as a C corporation as shown by a W-2 form. Having totaled these three incomes, the court divided the total sum by three, resulting in an average income of $107,433.00 per year for the purpose of the Child Support Guidelines. Applying the respective percentage of 32% to that obligation, the trial court arrived at a child support amount of $2,012.00 per month. See Tenn. Comp. R. & Regs. 1240-2-4-.03(5) (1994). Thereafter, the trial court reduced this sum to reflect the excess visitation exercised by Mr. Fezell and concluded that the appropriate child support after a credit of $435.42 was $1,576.58 per month. The trial court did not consider the economic benefit of Mr. Fezell's personal use of a company car in its child support calculation.

Mr. Fezell appealed, and the Court of Appeals affirmed the trial court's decision. Mr. Fezell now appeals the Court of Appeals' decision, arguing that the trial court erred by imputing to him the retained earnings of his S corporation for purposes of calculating his child support obligation. Mrs. Fezell responds that the trial court properly imputed to Mr. Fezell as income the retained earnings

of the corporation. She further argues that the trial court erred in calculating Mr. Fezell's child support obligation based on parenting time and that she should have been granted attorney's fees in this cause.

## II. Standard of Review

Whether the retained earnings of an S corporation can be imputed to the owner of the company in calculating a child support obligation is a question of law. Accordingly, our review is de novo with no presumption of correctness accorded to the courts below. State v. Yoreck, 133 S.W.3d 606, 609 (Tenn. 2004).

## III. Analysis

### A. Child Support Calculation

In this appeal, Mr. Fezell contends that the trial court erred in calculating his child support obligation by imputing to him as income the retained earnings from his S corporation. Specifically, he contends that such earnings should be imputed as income for child support purposes only in cases in which the retention of earnings is excessive or there is evidence that the obligor is actually manipulating his or her income. We agree.

Awards of child support are governed by the Child Support Guidelines promulgated by the Tennessee Department of Human Services Child Support Services Division. Tenn. Code Ann. § 36-5-101(e)(2) (2001). These guidelines, when properly applied, create a rebuttable presumption of the proper award in child support cases. Tenn. Comp. R. & Regs. 1240-2-4-.02(7) (1994). If the trial court determines that the evidence is sufficient to rebut this presumption, it must make a "written or specific" finding of the amount that would be required under the guidelines and the reasons why application of the child support guidelines would be unjust or inappropriate in a particular case. Id.

The child support guidelines provide that child support should normally be based on a flat percentage of the obligor's net income, depending on the number of children to be supported. Id. at -.03(2). Net income is calculated by subtracting appropriate deductions from gross income. Id. at -.03(4)(b). "Gross income" is defined as "all income from any source" including salaries, bonuses, dividends, interest, annuities, and income from self-employment. Id. at -.03(3)(a)(1). If those sources of income vary, the guidelines specify that these amounts should be averaged and added to the obligor's fixed salary. Id. at -.03(3)(b). These guidelines, when applied to an obligor whose income is derived from a salary and an occasional bonus or dividend, yield an easily quantitated child support amount. Once the obligor's income has been determined and the Child Support Guidelines have been applied, the calculation of child support is made with certainty, predictability, and precision.

Although achieving such precision is possible when calculating the child support owed by a salaried obligor, the calculation is much more difficult and much less precise when the obligor is self-employed. See Koch v. Koch, 874 S.W.2d 571, 576 (Tenn. Ct. App. 1993). The Child Support Guidelines therefore provide a different method for calculating a self-employed obligor's income. In the self-employed obligor's situation, the guidelines require the trial court to consider all income of the obligor parent, reduced only by reasonable expenses to produce the income. Income from self-employment "includes income from business operations and rental properties, etc., less reasonable expenses necessary to produce such income." Tenn. Comp. R. & Regs. 1240-2-4-.03(3)(a)(2) (1994).

These self-employment guidelines are fashioned in such a way as to authorize the trial court to address the potential of a self-employed obligor to manipulate income for the purpose of avoiding payment of child support. Courts have recognized that a self-employed obligor has the opportunity "'to manipulate his reported income by either failing to aggressively solicit business or by inflating his expenses, thereby minimizing his income.'" Mitts v. Mitts, 39 S.W.3d 142, 148 (Tenn. Ct. App. 2000) (quoting Sandusky v. Sandusky, No. 01A01-9808-CH-00416, 1999 WL 734531, at *4 (Tenn. Ct. App. Sept. 22, 1999)). Based on this reasoning, in certain situations, a court may impute income to a sole owner of a business. Id.

The Tennessee Child Support Guidelines seek to provide guidance by creating a presumptive child support obligation based on the net realized income of both employed and self-employed obligors. A child support obligor who is the sole or majority shareholder of a closely-held corporation does not fit particularly well into either of the above two child support guideline models. Such a shareholder possesses power over income that an ordinary corporate employee does not possess. On the other hand, a corporation which is not a sham is considered a separate entity, the existence of which is dependent on its compliance with the formalities of corporate law and its capitalization for maintaining its credit-worthiness. This separate identity status is characterized by a capital structure which is sufficient to meets its ordinary expenses and to provide the capitalization necessary for its business purpose.

Nevertheless, a majority shareholder in a corporation is similar to a sole proprietor in that the potential for manipulation of income exists. After careful consideration of this issue of first impression, we conclude that for the retained earnings of a corporation to be imputed to the sole or majority shareholder of a corporation, there must be a showing that those retained earnings are excessive or that the income is actually being manipulated. This approach requires trial courts to recognize the independent entity status of a corporation that is properly run by its shareholders. This recognition will require child support determinations to be based on the obligor's actual income and benefits while protecting the corporate entity's existence and the development of capitalization necessary to meet its legitimate business purposes.

In determining whether the earnings of the obligor's corporation are excessive, the trial court should consider the level of retained earnings or capitalization maintained in the closely-held corporation before the divorce occurred. Obviously, the pre-divorce level of corporate capitalization

and the practice of retaining corporate income for future capitalization provides a baseline for the expectations of the obligor's income and a recognition of the corporate capitalization necessary for future business activity. Expert testimony may be relevant to prove the level of retained earnings that are appropriate for the corporation to carry on its intended purpose, and the court should consider post-divorce corporation activities, particularly any unexplained increases or reductions of capitalization or retained earnings.

In order to determine whether a sole or majority shareholder is manipulating income, the court should closely examine personal expenses and economic benefits provided to the obligor by the corporation and should include the value of those extraordinary benefits in the obligor's income calculation. The trial court should consider any other factor that bears on the issue of whether the obligor is manipulating his or her income in an effort to avoid the proper payment of child support.

In this case, the trial court was not aided by the benefit of this decision in evaluating the obligor's income. As a consequence, the trial court averaged the federal taxable income for the years 1999, 2000, and 2001 in determining the obligor's income for the purpose of calculating child support. In this averaging process, the trial court imputed the retained earnings of PVS to Mr. Fezell in 1999 and 2000, which may have distorted the obligor's income for this calculation. Because there was no showing that PVS's retained earnings were excessive or that Mr. Fezell actually manipulated his income to avoid paying child support, the trial court erred in imputing the retained earnings of his corporation to him for the purpose of determining his child support obligation.

Further, in computing Mr. Fezell's income for child support purposes, the trial court failed to consider the economic value of his company car. The record established that PVS has provided Mr. Fezell with a leased Lexus automobile. He has had full use of this vehicle, both during business and nonbusiness hours. The child support guidelines provide that "'[i]n kind' remuneration must also be imputed as income, i.e., fringe benefits such as a company car." Tenn. Comp. R. & Regs. 1240-2-4-.03(3) (1994). Thus, the economic value of the private use of the car during nonbusiness hours should also have been considered as part of the obligor's income.

Mrs. Fezell next contends that the trial court erred in reducing Mr. Fezell's child support obligation based on his parenting time. Specifically, she contends that the trial court should have calculated parenting time in hours rather than days. The evidence does not preponderate against the trial court's calculation of parenting time.

B. Attorney's Fees

Finally, Mrs. Fezell argues that the trial court erred by refusing to grant her attorney's fees in this cause. In denying attorney's fees, the trial court stated that "no contractual or statutory duty of payment of [attorney's fees] exists." The Court of Appeals found no abuse of discretion by the trial court.

Mrs. Fezell contends that Mr. Fezell has both a statutory duty and a contractual duty to pay her attorney's fees in this cause. In Tennessee, courts follow the American Rule, which provides that litigants must pay their own attorney's fees unless there is a statute or contractual provision providing otherwise. State v. Brown & Williamson Tobacco Corp., 18 S.W.3d 186, 194 (Tenn. 2000). "The allowance of attorney's fees is largely in the discretion of the trial court, and the appellate court will not interfere except upon a clear showing of abuse of that discretion." Aaron v. Aaron, 909 S.W.2d 408, 411 (Tenn. 1995).

Mrs. Fezell contends that Tennessee Code Annotated section 36-5-103(c)(2001) requires that Mr. Fezell pay her attorney's fees in this cause. That statute provides,

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Id. This Court has held that "[i]n cases involving the custody and support of children, . . . it has long been the rule in this State that counsel fees incurred on behalf of minors may be recovered when shown to be reasonable and appropriate." Deas v. Deas, 774 S.W.2d 167, 169 (Tenn. 1989). Although "[t]here is no absolute right to such fees, . . . their award in custody and support proceedings is familiar and almost commonplace." Id. at 170. In awarding attorney's fees pursuant to section 36-5-103(c), the trial court may consider proof of inability to pay, but such consideration will not be controlling. Sherrod v. Wix, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992).

Further, the MDA in this case provides that "[s]hould either party incur any expenses or legal fees as a result of the breach of any portion of this Marital Dissolution Agreement by the other party, the defaulting party shall be responsible for all reasonable attorney's fees and suit expenses to the non-defaulting party." Mrs. Fezell argues that because the trial court found that Mr. Fezell failed to properly fund the trust, he was in breach of the MDA. We agree.

In this case, the father filed the original petition in an effort to modify his parenting time, to decrease his child support payments, and to have a trust provision in the MDA declared void. Because Mr. Fezell sought to have his parenting time altered and his child support obligation decreased, we believe that both Tennessee Code Annotated section 36-5-103(c) and the contractual agreement between the parties in the MDA provide a basis to award attorney's fees to the successful litigant. Therefore, we conclude that the trial court erred in not granting Mrs. Fezell's attorney's fees for the initial litigation. With respect to attorney's fees associated with this appeal and any rehearing associated with our remand, we leave determination to the sound discretion of the trial court which should remain mindful of contractual and statutory authority for awarding attorney's fees.

## IV. Conclusion

We conclude that the trial court erred by imputing the retained earnings of PVS as income to Mr. Fezell for the purpose of calculating his child support obligation and by failing to include the benefit of Mr. Fezell's personal use of a company car in the income calculation. Additionally, we conclude that the trial court erred by failing to grant Mrs. Fezell attorney's fees in this cause. Accordingly, the judgment of the Court of Appeals is reversed. This case is remanded to the trial court for a determination of Mr. Fezell's child support obligation that is consistent with this opinion and a determination of the proper amount of attorney's fees. The costs of this appeal are divided equally between the parties, Angela D. (Fezell) Taylor and Douglas Fezell, and their sureties, for which execution may issue if necessary.

_____
J. S. "STEVE" DANIEL, SPECIAL JUSTICE