IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 12, 2005 Session

## DONNA RENEE MORGAN v. JEFFRIE W. MORGAN

**Appeal from the Circuit Court for McMinn County**
**No. 24983     Lawrence H. Puckett, Judge**

No. E2005-00305-COA-R3-CV  - FILED DECEMBER 27, 2005

Donna Renee Morgan ("Mother") filed a complaint for divorce from her husband of 11 years, Jeffrie W. Morgan ("Father"). The trial court awarded Mother a divorce and designated her as the primary residential parent of the parties' minor child. In addition, the trial court divided the parties' property and awarded Mother alimony and child support, basing its child support award on an annual salary for Father of $110,000. Father appeals, arguing that he should have been awarded primary residential parent status and contending that the trial court erred in its determination of his annual income. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Scarlett Beaty Latham, Albany, Kentucky, for the appellant, Jeffrie W. Morgan.

Jimmy W. Bilbo, Cleveland, Tennessee, for the appellee, Donna Renee Morgan.

**OPINION**

I.

The parties were married on December 27, 1991. One child was born to their union, Madison McKenzie Morgan (DOB: December 13, 1994).

In 1992, Father formed Morgan Tool & Die, and six years later, he established Morgan Tool & Automation, Inc. ("the Company"). The Company, which operates as an S corporation for federal income tax purposes, builds machines which are used to manufacture component parts for the automotive industry. At the time the Company was formed, Father, the Company's president and

its lead engineer, was the majority shareholder, owning 99% of the Company's stock, with Mother, as secretary/treasurer, owning the remaining 1%.

On February 18, 2003, Mother filed a complaint for divorce in the trial court. In addition to the divorce, Mother sought, *inter alia*, alimony, attorney's fees, and an equitable division of the marital property. Father answered Mother's complaint and filed a counterclaim for divorce.

The trial court heard the case over three days in April and June of 2004. In order to determine the fair market value of the Company for the purpose of the divorce, Father hired Ronald E. Arnett, a CPA and certified valuation analyst. Mr. Arnett testified at trial as an expert witness for Father. He testified extensively on the valuation report he prepared at Father's behest. Among many other things, his report indicated that, while Father drew a salary of $32,338[1] in 2003, a reasonable salary for the position occupied by him would be $110,000. Mr. Arnett arrived at this figure based upon what he believed the Company would have to pay in order to hire a third-party to perform the various functions now being handled by Father. The testimony at trial also revealed that Father received distributions from the Company in 2003 totaling $68,259, for a total received income associated with the Company of $100,597.

At the conclusion of the divorce trial, the court announced its ruling from the bench, awarding Mother an absolute divorce on the ground of inappropriate marital conduct and naming Mother primary residential parent of the child. In addition, the trial court made a division of property; awarded alimony to Mother; and ordered Father to pay Mother's attorney's fees and expenses. With respect to child support, the trial court held that this obligation should be based upon an annual gross income of $110,000. The court, in making this determination, relied on what Father earned in 2003, "or what would have been a reasonable salary for him." The court then ordered the parties to mediate "shared parenting issues and child support." The mediation resulted in Father being obligated to pay Mother child support of $1,000 per month, on the following basis:

> This amount is calculated as a result of Father having seventy-eight (78) days over and above the standard eighty (80) days co-parenting every year. The normal child support figure would [be] $1,383 per month without a deviation. Considering the deviation, the support should be $1,087 per month. However, in consideration of Father carrying health insurance and covering all medical and dental expenses not covered by any insurance in effect, the parties have deviated further to $1,000 per month.

The trial court entered its final judgment on October 4, 2004, incorporating its memorandum opinion from the hearing, as well as the parenting plan agreed-to by the parties during mediation. From this judgment, Father appeals.

---

[1] While Mr. Arnett's report actually indicates Father's 2003 salary to be $32,650, Father's 2003 income tax return and W-2 show a salary of $32,338; we have chosen to rely on the latter figure.

## II.

In this non-jury case, our review of the trial court's factual findings is *de novo*; however, the case comes to us accompanied by a presumption that those findings are correct – a presumption that we must honor unless the evidence preponderates against the trial court's factual findings. Tenn R. App. P. 13(d); ***Musselman v. Acuff***, 826 S.W.2d 920, 922 (Tenn. Ct. App. 1991). Our search for the preponderance of the evidence is tempered by the principle that the trial court is in the best position to assess the credibility of the witnesses; accordingly, such determinations are entitled to great weight on appeal. ***Massengale v. Massengale***, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995); ***Bowman v. Bowman***, 836 S.W.2d 563, 566, 567 (Tenn. Ct. App. 1991).

## III.

### A.

Father raises two issues on appeal, which issues essentially present the following questions:

> 1. Does the evidence preponderate against the trial court's decision to name Mother the primary residential parent of the parties' child?
>
> 2. Does the evidence preponderate against the trial court's determination, for the purpose of calculating child support, that Father has a gross annual income of $110,000?

By way of a separate issue, Mother seeks an award of her attorney's fees and costs incurred in defending this appeal.

### B.

Father first contends that the trial court erred in naming Mother as primary residential parent of the parties' minor child. In support of his argument, Father relies on testimony indicating, for a variety of reasons, that he would be the more suitable primary residential parent for the child. In addition, Father contends that the trial court erred in ordering the parties to mediate the issue of parenting time and asserts that, at a minimum, he should have been awarded equal parenting time with the child.

A trial court has broad discretion regarding a custody determination. ***Brumit v. Brumit***, 948 S.W.2d 739, 740 (Tenn. Ct. App. 1997); ***Varley v. Varley***, 934 S.W.2d 659, 665 (Tenn. Ct. App. 1996); ***Marmino v. Marmino***, 238 S.W.2d 105, 107 (Tenn. Ct. App. 1950). We will not disturb such a determination unless the record reflects an "erroneous exercise of that discretion." ***Mimms v. Mimms***, 780 S.W.2d 739, 744-45 (Tenn. Ct. App. 1989). "Absent some compelling reason otherwise, considerable weight must be given to the judgment of a trial court in a divorce proceeding in respect to the credibility of the parties and their suitability as custodians." ***Id.*** at 744.

There are "[n]o hard and fast rules . . . for determining which custody and visitation arrangement will best serve a child's needs." ***Gaskill v. Gaskill***, 936 S.W.2d 626, 630 (Tenn. Ct. App. 1996). A custody determination is "factually driven" and "requires the courts to carefully weigh numerous considerations." ***Id.*** The overriding consideration is the best interest of the child. ***Id.***

In the instant case, the trial court, in reaching its custody decision, made the following findings:

> But I do believe [Mother] has a credible basis for her feeling of fear and continued concern about threatening behavior by [Father]. I don't like making that finding, but I do because I've observed [Father] in ths courtroom as he's testified. And he appears in court to have, as I said, outstanding qualities, the work ethic that he's displayed, the diligence to build the business, but he is – he's very overbearing in his demeanor. And he's combative and has been combative in his responses at times to simple questioning by adversary counsel and even by the Court. And I've had to note that. His position in this case that [Mother] would be entitled to nothing from the business in my view is unreasonable, has been unreasonable, but that attitude is consistent with what someone testified that he would just as soon see the mother of his child living on the street. It's totally consistent with the position he's taken in this case. It speaks volumes of his attitude toward his wife, the mother of his daughter.
>
> So I have to say this, that in this hostile attitude toward [Mother] there's an old adage that said more is caught than taught. And I understand the child said, well, he doesn't say bad things about my mom, but this attitude he has about [Mother] is bound and I believe is caught by the child and will be caught by the child. It certainly was displayed here in open court to this trial court. And so I think that's a serious concern the Court has about [Father] and his relationship with his daughter. I will just say it's very likely, much more likely that his attitude toward [Mother] would drive a wedge between [Mother] and the daughter than anything I've heard about [Mother's] comments about [Father] would tend to alienate her from [Father].
>
> [Father] does have a very good relationship with his daughter and the daughter needs her father and she thrives in his company and presence. But it's the determination of this Court that [Mother] is the more suitable person for primary residential parent and she's awarded that status.

It is clear from the record that the trial court, having heard all of the testimony, assessed the credibility of the witnesses and determined that it was in the child's best interest to reside primarily with Mother. As we have previously stated, it is the unique function of the trial court to assess witness credibility, and, having found no abuse of discretion in that assessment, we decline to overturn the lower court's decision designating Mother as primary residential custodian. Furthermore, we find no error in the trial court's decision to order the parties to mediate the issue of shared parenting time, nor do we find any error in the decision to award Father some 158 days of visitation per year. Accordingly, we find that the evidence does not preponderate against the trial court's ruling on this issue. The trial court did not abuse its discretion on the issue of custody.

C.

Father next contends that the trial court erred in finding and holding that his gross income for the purpose of calculating percentage child support going forward was $110,000 per year. Father strenuously argues that there is no evidence, from an historical perspective, that he has ever received an annual salary in the range found by the trial court. He urges us to find that his practice of "plowing" earnings back into the Company rather than taking them out as salary was a reasonable business decision on his part.

Father argues that the trial court failed to properly apply the holding of the Supreme Court in the case of *Taylor v. Fezell*, 158 S.W.3d 352 (Tenn. 2005) to the facts of the case at bar. Because *Taylor* involves an S corporation,[2] as does the instant case, we turn to that case as a prelude to our discussion of the issue now under consideration.

In *Taylor*, the Supreme Court rejected a suggestion that the retained earnings of an S corporation should automatically be imputed to a sole or majority shareholder of such a corporation for the purpose of calculating his or her percentage child support obligation under the child support guidelines. *Id.* at 357. The High Court held as follows:

> We conclude that absent a showing that the retained earnings are excessive or that an obligor is actually manipulating his or her income, the retained earnings of an S corporation should not be

---

[2]An S corporation is an entity recognized under the federal income tax code. The Supreme Court in *Taylor* discussed how the income of such a corporation is treated for tax purposes:

> An S corporation's income passes through that corporate entity to the individual shareholders in proportion to their respective stock ownership. This passing through of income takes place for federal income tax purposes, regardless of whether the earnings of the corporation are retained to enhance the corporation's capital position. Thus, the shareholders of an S corporation are required to pay taxes on their apportioned shares of the corporation's earnings, regardless of the actual sums they are paid.

*Id.* at 355-56.

imputed as income to the sole or majority shareholder in calculating a child support obligation.

***Id.*** at 354-55.

***Taylor*** is inapposite. The trial court in the instant case did *not* impute the retained earnings of the Company to Father. Rather, as the trial court stated, his selection of the $110,000 figure was "based [up]on [Father's] last year's [*i.e.*, 2003] earnings or what would have been a reasonable salary for him last year." The evidence does not preponderate against the trial court's finding with respect to the gross income figure of $110,000.

Father's 2003 income tax return reflects a salary from the Company of $32,338. He also paid federal income tax on $127,298, a figure that is reflected on his personal tax return as "[r]ental real estate, royalties, partnerships, S corporations, trusts, etc." It is obvious that this figure relates, at least in part, to the net income of $126,588 reflected on the Company's tax return. ***Taylor*** teaches that the figure of $126,588 cannot be imputed to Father in the absence of a "showing that those retained earnings are excessive or that the income is actually being manipulated." ***Id.*** at 358. However, it is not correct to assert that the trial court in the instant case imputed the $126,588 figure to Father. It did not. Rather, it added to Father's salary of $32,338, *not* the $126,588 figure, but rather another very significant entry on the Company's tax return. On page 3 of the Company's return prepared by its CPA, the Company reflected that it distributed "[t]otal property distributions (including cash)" of $68,259. It is clear from the testimony of the expert witness – who was himself a CPA – presented by Father that this entry means that, of the Company's *earnings*, the amount of $68,259 or thereabouts was distributed to Father, the 99% shareholder of the Company. When this figure is added to Father's salary of $32,338, we are left with a gross received income figure to Father of $100,597.

There is other testimony in the record bearing upon the subject at hand. In 2003, the Company paid personal attorney's fees for Father of $12,143. The Company also paid for Father's and the child's dental treatment in the amount of $2,212.50 in the same year. It is also clear from the record that there were some child support, alimony, and expert witness fees paid directly out of the funds of the Company. In this connection, it should be noted that the Company's tax return reflects, as of December 31, 2003, "[l]oans to shareholders" of $18,128.

As a part of the testimony of Father's expert witness pertaining to the subject of the value of the business, the expert opined that if an outside person had to be hired to operate the business, *i.e.*, take the place of Father, he or she could reasonably expect a salary of $110,000 and that, from his analysis of the Company, it would have been financially able to pay this salary.

When all of this evidence is considered, we are unable to say that the evidence preponderates against the trial court's establishment of a $110,000 figure as Father's annual gross income.

D.

Mother seeks an award of her attorney's fees incurred on this appeal. We find that she is entitled to such an award and therefore remand this case to the trial court for a determination of a reasonable fee. *See* ***D v. K***, 917 S.W.2d 682, 687 (Tenn. Ct. App. 1995) (awarding reasonable attorney fees upon petition for rehearing and remanding to trial court for a determination of said fees).

IV.

The judgment of the trial court is affirmed. This case is remanded to the circuit court for such further proceedings as may be necessary, consistent with this opinion, and for the collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellant, Jeffrie W. Morgan.

_____
CHARLES D. SUSANO, JR., JUDGE