

IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 2, 2016

## 240 POPLAR AVENUE GENERAL PARTNERSHIP v. CHERYL GRAY

Appeal from the Circuit Court for Shelby County
No. CT-001325-14     Felicia Corbin-Johnson, Judge

_____

### No. W2016-00697-COA-R3-CV

_____

This is a breach of contract action in which the lessor filed suit against the lessee for non-payment of rent, utilities, and repairs pursuant to the terms of a lease agreement for two units in a commercial building. Following a hearing, the trial court entered a judgment in favor of lessor. The lessee appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and KENNY ARMSTRONG, J., joined.

Cheryl Gray, Lakeland, Tennessee, pro se.

Roger A. Stone, Memphis, Tennessee, for the appellee, 240 Poplar Avenue General Partnership.

## OPINION

### I.     BACKGROUND

On March 17, 2004, Cheryl Gray ("Lessee"), individually and doing business as Gray Bail Bond Company ("Gray Bail Bond"), entered into a lease agreement with 240 Poplar Partnership ("Lessor") for the use of two offices in a commercial building. The lease agreement provided, in pertinent part, as follows:

> **WITNESSETH**, that [Lessor], for and in consideration of the rent hereinafter reserved and the covenants, agreements and stipulations herein

contained to be paid, executed and performed by [Lessee], does by these presents let, lease and demise unto said [Lessee], its successors, successors in interest and assigns, the following described property located in Memphis, to-wit: One (1) office located at 240 down Poplar Avenue and one (1) office located at 238 up Poplar Avenue.

## PURPOSE

It is agreed that the business to be conducted within the leased premises is that of the bail bond business and other services which may be reasonably related to the business.

## TERM OF LEASE

[Lessee] shall have and hold the above described property for a five-year term beginning with the 1st day of April, 2004 and ending on the 31st day of March, 2009. This Lease shall automatically be renewed for subsequent one (1) year terms under the same Lease provisions of this Agreement unless Lessee gives written notice of intent not to renew, said notice to be delivered to [Lessor] no less than three months prior to the expiration of the lease.

After the second year, [Lessor] may cancel or amend lease with ninety days['] notice to [Lessee].

* * *

## AMOUNT OF RENTAL

The [Lessee] shall pay rent for the subject premises as follows:

1.      Rent of $2800.00 per month beginning April 1, 2004 and continuing through the lease term.

2.      Monthly rental payments shall be due and payable on or before the 5th day of each month. Rental payments received after such day of each month shall also include a late fee in the amount of ten percent (10%). Acceptance by LESSOR shall not constitute a waiver of default of payment of rent. Rent payment shall be delivered to Lessor at [242 Poplar Avenue] or to such other location as designated by Lessor.

* * *

## UTILITIES

Cost of all heat, water, electricity, gas, city service fee, sewer charge or other utilities used on the leased premises shall be paid by [Lessee], except as may be otherwise provided herein.

* * *

## COLLECTION COSTS

[Lessee] agrees to pay all costs of collection, including reasonable attorney fees of no less than one-third, if all or any part of the rent reserved herein is collected after maturity with the aid of an attorney, also to pay reasonable attorney fees of no less than one-third in the event it becomes necessary for [Lessor] to employ an attorney to force [Lessee] to comply with any of the obligations, conditions or requirements imposed by this Lease, whether or not suit is instituted.

* * *

## Additional Covenants

[Lessee] hereby further covenants:

* * *

**Heating and air conditioning, plumbing repairs**. It is further agreed that if the heating or air conditioning units on the premises are in need of a compressor or need additional repairs during the term of this lease, or if plumbing repairs are required, same will be done at the expense of [Lessee].

At some point in 2008, Gray Bail Bond was administratively dissolved and no longer able to operate in the bail bonding business. Thereafter, ASAP Bail Bond ("ASAP") began operations in the same location and remitted payment for rent and utilities with Lessee's permission and involvement. While ASAP made payments directly to Lessor, it was never added as a party to the lease agreement. ASAP was incorporated on January 21, 2009, and continued to remit payment for rent and utilities pursuant to the lease agreement.

In November 2013, Lessee provided notice of intent to vacate both offices no later than December 31, 2013. Lessee failed to remit payment for rent and utilities for the months of November and December 2013 and January, February, and March 2014. Lessee also refused payment for a portion of a heating, ventilation, and air conditioning

- 3 -

("HVAC") repair bill. Lessor filed a detainer warrant in the General Sessions Court of Shelby County, Tennessee against "Cheryl Gray, Ind., d/b/a Gray Bail Bond d/b/a ASAP Bail Bond and/or Occupants", alleging forcible entry and unlawful detainer of the premises. The court entered judgment against Lessee.

Lessor then appealed to the Circuit Court of Shelby County and filed an amended complaint because the judgment entered by the General Sessions Court did not include ASAP as a responsible party. Lessor alleged that ASAP was also liable for damages as a successor in interest pursuant to the terms of the lease agreement. The case proceeded to a hearing, at which several witnesses testified. Much of the testimony presented concerned ASAP's status as a successor in interest. We will not recount this testimony because ASAP is no longer a party in this appeal.

As pertinent to this appeal, Lessee's sister, Patrice Gray, testified that she began her employment with ASAP after Gray Bail Bond was dissolved. She provided that ASAP housed its operations in the office building at issue until December 31, 2013. She provided that ASAP regularly remitted payment for rent and utilities directly to Lessor until they vacated the building.

Lessee identified the lease agreement at issue and agreed that failure to remit payment for rent within five days of the due date resulted in a 10 percent late charge. She further agreed that she was responsible for the payment of her portion of the utilities and HVAC repair pursuant to the lease agreement. She explained that another party in the building paid a portion of the utilities and repairs.

Lessee testified that she provided notice of intent to vacate at some point in November 2013. She recalled remitting payment for one additional utility bill before she left the premises in December 2013. She explained that she was an authorized signor on ASAP's account to ensure that payments were made to Lessor in accordance with the lease agreement at issue. She claimed that she remitted payment for rent in November 2013 but agreed that she failed to remit payment for the remainder of the lease term. She acknowledged that the lease agreement was subject to an annual renewal following the expiration of an initial five-year term. She believed that she was no longer responsible for rent or utilities after she vacated the building.

Lessee's daughter, Cheralyn Gray, testified that she was employed by ASAP but that Patrice Gray was responsible for the day-to-day operations of the company. She explained that she suffered from chronic migraines and was unable to work in the office on a regular basis. She acknowledged that ASAP remitted payment for utilities and rent directly to Lessor until they vacated the building in December 2013. She stated that she never signed a lease with Lessor or even spoke with Lessor's representatives. She

identified several rental payments signed by her but also agreed that Lessee was also an authorized signor on ASAP's account.

Mark Morris testified that he is a licensed HVAC technician and had operated Mark Morris Heating and Air Conditioning for approximately 26 years. He recalled working on a unit at 240 Poplar Avenue at some point in September or August 2013. He identified two bills, one for $890 and another for $3,720, that he generated as a result of his attempt to repair the HVAC in the building. He believed his bills were fair and reasonable for the work performed and that he charged a competitive rate in comparison to the other companies in the area.[1] He stated that he returned approximately three weeks later to fix a thermostat for the upstairs office in the building. He believed his bill for the work was approximately $125.

Ellen Fite testified that she and Frank Holloman formed the partnership known as 240 Poplar Partnership. She is responsible for handling the day-to-day operations of their business. She stated that the property at issue is comprised of four offices, two upstairs and two downstairs, with one gas meter that fed all four offices and an electric meter for the two downstairs offices. She recalled that Lessee occupied two offices, one upstairs and one downstairs. She explained that Lessee was responsible for one-half of the gas meter for the whole building, one-half of the electrical usage for the downstairs portion of the building, and one-half of other ancillary charges incurred. She stated that Lessor was also responsible for the full payment of the electrical usage for the upstairs office because it housed a separate electrical meter. She recalled that repairs were divided in a similar manner, depending upon which office or area in the building needed repair.

Ms. Fite testified that Lessee attempted to repair the HVAC issue by herself but that the person Lessee hired failed to correct the problem. She noted that Lessee paid the bill for the person she hired and charged the adjoining office for a portion of the bill. Ms. Fite stated that she later hired Mr. Morris, who successfully fixed the HVAC unit. She provided that Lessee was charged but failed to remit payment for one-half of each of the two initial bills and for the full amount of the thermostat repair that was needed for the upstairs office occupied by Lessee.

Ms. Fite testified that Lessee failed to remit payment for rent for November and December 2013 and for January, February, and March 2014.[2] She recalled that the rental

---

[1] Lessee testified as a qualified HVAC expert as a result of her experience as a general contractor. She provided that the unit was likely installed in the 1980s and was not fit for a commercial building. She disagreed with Mr. Morris's pricing and claimed that he billed twice the amount necessary for the type of repairs performed.

[2] Lessee admitted that she did not have documentation or receipts to prove otherwise.

rate at that time was $3,412 per month, thereby reflecting a rental arrearage of $17,060 in addition to a 10 percent penalty of $1,705 for failure to remit payment on time. She noted that neither Lessee nor ASAP remitted payment for their portion of the utilities in the amount of $972.13 and HVAC repairs in the amount of $2,430.

Following the hearing, the court entered judgment against Lessee and ASAP, jointly and severally, in the amount of $22,167.13 for rent, utilities, and HVAC repairs, plus attorney fees and post-judgment interest. This appeal followed.

## II.    ISSUES

We consolidate and restate the issues on appeal as follows:

A.    Whether Lessee's attorney committed legal malpractice.

B.    Whether the trial court erred in entering judgment for Lessor.

C.    Whether Lessor is entitled to attorney fees on appeal pursuant to the terms of the lease agreement.

## III.    STANDARD OF REVIEW

The factual findings of the trial court are accorded a presumption of correctness on appeal and will not be overturned unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Because trial courts are in a far better position than this court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Consequently, where issues of credibility and weight of testimony are involved, this court will accord considerable deference to the trial court's factual findings.

## IV.    DISCUSSION

### A.

Lessee argues that her attorney committed legal malpractice by failing to introduce evidence of a mold infestation in the office building as reason for her decision to vacate the premises. She claims that the failure to introduce the evidence affected the outcome

of the trial. While this issue is related to the proceeding below, this appeal is not the avenue in which to seek the relief Lessee desires, namely a legal malpractice action against her attorney. Appellate courts "cannot exercise original jurisdiction" and act as the "trier-of-fact." *Peck v. Tanner*, 181 S.W.3d 262, 265 (Tenn. 2005) (citations omitted); *see also Pierce v. Tharp*, 461 S.W.2d 950, 954 (Tenn. 1970) (rejecting appellants' "novel" request to adduce proof in support of their motion). The jurisdiction of this court is "appellate only." Tenn. Code Ann. § 16-4-108. Accordingly, we need not address this issue.

## B.

Other than the legal malpractice argument, the only other issue raised by Lessee on appeal is whether the court erred in entering judgment against ASAP as a successor in interest. The record reflects that we dismissed the appeal as it pertains to ASAP on August 5, 2016. Any issues pertaining to ASAP's liability as a successor in interest are pretermitted by this court's August 2016 order. "Even though the courts cannot create claims or defenses for pro se litigants where none exist, they should give effect to the substance, rather than the form or terminology, of a pro se litigant's papers." *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003) (internal citations omitted). Accordingly, we will address the sufficiency of the judgment as it pertains to Lessee.

The record reflects that Lessee failed to remit payment for rent, utilities, and HVAC repairs as required pursuant to the lease agreement. Lessee offered no evidence at trial to reflect that payments were made in accordance with the lease agreement. Her only argument at trial was that the amount claimed by Lessor for the repairs was excessive. The trial court disagreed with her testimony by entering judgment in favor of Lessor. This is a factual finding that is afforded great deference on appeal. Accordingly, we affirm the judgment of the trial court.

## C.

Lessor requests attorney fees on appeal pursuant to the provisions of the lease agreement. Tennessee follows the American Rule which provides that "litigants pay their own attorney's fees absent a statute or an agreement providing otherwise." *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000); *accord Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005). "Under the American [R]ule, a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American [R]ule applies, allowing for recovery of such fees in a particular case." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009) (citing *Taylor*, 158 S.W.3d at 359; *John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d

528, 534 (Tenn. 1998)).  An award of attorney fees on appeal is appropriate pursuant to the terms of the lease agreement.  We remand this case to the trial court for proceedings to determine the reasonable amount of such fees incurred by Lessor on appeal.

## V.    CONCLUSION

The decision of the trial court is affirmed.  The case is remanded for further proceedings consistent with this opinion.  Costs of the appeal are taxed to the appellant, Cheryl Gray.

_____
JOHN W. McCLARTY, JUDGE