

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 23, 2017 Session

**WALNUT RUN HOMEOWNER'S ASSOCIATION, INC. v.
JERRY WAYNE WILKERSON**

**Appeal from the Chancery Court for Hamilton County
No. 13-0552     Jeffrey M. Atherton, Chancellor**

_____

**No. E2016-01084-COA-R3-CV**

_____

The owner of property in a residential subdivision appeals the order of the trial court prohibiting construction of an eight-foot wooden fence.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and Andy D. BENNETT, J. joined.

Buddy B. Presley, Jr., Chattanooga, Tennessee, for the appellant, Jerry Wayne Wilkerson.

Neil A. Brunetz, M. Ellis Lord, Robert F. Parsley, and Lynzi J. Archibald, Chattanooga, Tennessee, for the appellee, Walnut Run Homeowner's Association.

**OPINION
I.     BACKGROUND**

In 1987, Harvey and Linda Robinson ("the Robinsons") acquired property in Ooltewah, Tennessee.  Working with Marshall Berry, Bill Fine, and Terry Payne, the Robinsons developed a plan to create a residential subdivision called the Walnut Run Subdivision ("the Subdivision").  In September 2006, a final plat was recorded establishing the Subdivision, and in March 2007, Restrictive Covenants ("the Covenants") governing the subdivision were recorded in the Register's Office of

Hamilton County.   The Covenants, signed by Terry Payne as an "Authorized Representative" on behalf of Walnut Run, provided for the establishment of the Walnut Run Homeowner's Association ("the Association" or "Plaintiff").   As pertinent to this appeal, the Covenants provided:

> WHEREAS, WE HARVEY AND LINDA ROBINSON, BILL FINE, AND MARSHALL BERRY ARE THE OWNERS OF PROPERTY IN THE SECOND CIVIL DISTRICT OF HAMILTON COUNTY, TENNESSEE, KNOWN AS WALNUT RUN SUBDIVISION LOTS 1 THRU 80.
>
> WHEREAS IT IS OUR INTENT, PURPOSE, AND DESIRE TO INSURE THAT THE VARIOUS LOTS IN SAID SUBDIVISION ARE DEVELOPED INTO A RESIDENTIAL SECTION, AND FOR SUCH PURPOSES, THERE ARE IMPOSED ON THE VARIOUS LOTS, UNLESS SPECIFIED OTHERWISE, THE RESTRICTIVE COVENANTS AND CONDITIONS HEREINAFTER SETFORTH, WHICH SHALL BE DEEMED TO BE A PART OF THE CONSIDERATION OF THE CONVEYING OF SAID LOTS, AND SAID RESTRICTIVE COVENANTS AND CONDITIONS SHALL RUN WITH THE LAND, THE SAME BEING FOR USE, PROTECTION, AND BENEFIT OF THE PRESENT AND FUTURE OWNERS OF LOTS IN SAID SUBDIVISION, AND ARE TO BE EFFECTIVE, WHETHER OR NOT THEY ARE SET FORTH SPECIFICALLY IN SUBSEQUENT CONVEYANCES.
>
> * * *
>
> TERMS OF COVENANTS.  THESE COVENANTS RUN WITH THE LAND AND ARE BINDING ON ALL PARTIES AND ALL PERSONS CLAIMING UNDER THEM FOR A PERIOD OF TWENTY-FIVE (25) YEARS FROM THE DATE THESE COVENANTS ARE RECORDED, AFTER WHICH TIME SAID COVENANTS SHALL BE AUTOMATICALLY EXTENDED FOR SUCCESSIVE TEN (10) YEAR PERIODS, UNLESS AN INSTRUMENT SIGNED BY A MAJORITY OF THEN OWNERS OF THE LOTS HAS BEEN RECORDED AGREEING TO CHANGE SAID COVENANTS IN WHOLE OR IN PART.
>
> ENFORCEMENT.  IN THE EVENT OF VIOLATION OR ATTEMPTED VIOLATION OF ANYONE OR MORE OF THE FOREGOING RESTRICTIVE COVENANTS AND CONDITIONS, THE PARTY OR PARTIES GUILTY THEREOF SHALL BE SUBJECT TO AND LIABLE AT THE SUIT OF LINDA AND HARVEY ROBINSON, AND/OR

MCDANIEL AND SON CONSTRUCTION COMPANY INC. THEIR HEIRS OR ASSIGNS, TO BE ENJOINED BY PROPER PROCESS FROM SUCH VIOLATION, AND SHALL BE FURTHER LIABLE FOR SUCH DAMAGES AS MAY ACCRUE, IT BEING STIPULATED THAT COURT COSTS AND REASONABLE ATTORNEY FEES INCIDENT TO ANY SUCH PROCEEDINGS SHALL CONSTITUTE LIQUIDATED DAMAGES, WE RESERVE THE RIGHT AND THE PRIVILEGE OF WAIVING MINOR VIOLATIONS OF THESE RESTRICTIVE COVENANTS AND CONDITIONS WHEN THE SAME DO NOT, IN OUR OPINION, MATERIALLY AFFECT THE PURPOSES SOUGHT TO BE ATTAINED BY THESE RESTRICTIVE COVENANTS, AND PROVIDING THAT IF SUCH VARIANCE OR VIOLATIONS, A VIOLATION OF ANY ZONING ORDINANCE, VARIANCE FOR SUCH ZONING VIOLATION MUST ALSO BE PROCURED.

The Covenants prohibited lot owners from erecting a fence of a "height more than four feet from the ground." Further, lot owners were specifically required to "get written permission from the developers or their representatives" before erecting a fence. The Covenants were amended on May 8, 2010,[1] to create an Architectural Review Committee. Relative to fencing, the Covenants, as amended, provided as follows:

No fences will be allowed on any Lot without the prior written consent of the Architectural Committee. All proposed fences must be submitted to the Architectural Review Committee showing materials, design height and location. No chain link fences will be permitted on any lot. All fences must be 4 ft. tall.

The Covenants, as amended, were signed by Darrell G. Goforth and Martin M. Brewer on behalf of Plaintiff.

In 2012, the Robinsons conveyed the property at issue to Taylor Cavin, who later conveyed the property to Jerry Wayne Wilkerson ("Defendant"). Each deed was recorded and explicitly provided that the conveyance was made "subject to" the Covenants. Without obtaining written permission, Defendant began construction of an eight-foot wooden fence surrounding his backyard that contained a pool.

On December 11, 2012, Brian Lichtenberg, Vice President of the Association, notified Defendant that construction must stop because the fence violated the Covenants. In response, Defendant submitted a written proposal for construction of an eight-foot

---

[1] The amendment was recorded in the Register's Office of Hamilton County on April 15, 2013.

wooden fence. The committee denied the proposal as submitted but offered permission to build a six-foot vinyl or aluminum fence around the pool. When Defendant continued construction of the wooden fence, the committee provided notice that failure to remove the fence within 30 days would result in legal action. Defendant submitted a renewed proposal for a six-foot wooden fence. His proposal was denied. However, he continued construction, despite his failure to obtain permission to construct the fence as desired.

Plaintiff filed suit on July 30, 2013, requesting injunctive relief and damages. Defendant filed an answer on October 14, 2013, in which he claimed that neither the original nor the amended version of the Covenants prohibited construction of a wooden fence. He later filed an amended answer, in which he requested a declaratory judgment holding that the Covenants were not legally binding because the stated signatory, Walnut Run, was an undefined entity that did not own any of the property subject to the Covenants. He explained that the Robinsons possessed sole ownership of the property between June 10, 1987, and June 20, 2012; therefore, neither Mr. Payne nor the Association had the authority to execute restrictive covenants governing the property. He also filed a motion for summary judgment recounting the same argument and adding that the amendment to the Covenants was invalid because it was not executed by a person or entity with an ownership interest in the property and was not signed by a majority of lot owners. In support of his motion, Defendant filed a statement of undisputed material facts, exhibits, and an affidavit. One such exhibit contained a power of attorney, executed by Mr. Robinson and dated April 24, 2007, authorizing Mr. Payne "to mortgage, sell, convey, encumber, or otherwise deal with" the property comprising the Subdivision.

Plaintiff responded with an amended complaint, in which it argued that the Covenants, as amended, contained the same relevant restrictions and provided for the same relief requested in the original complaint. Plaintiff also filed its own motion for summary judgment, arguing that it was entitled to judgment as a matter of law because the Covenants are enforceable under Tennessee law both as real covenants *and* as an equitable servitude. Plaintiff claimed that the term Walnut Run is a clear reference to the property owners listed at the outset of the Covenants. Plaintiff further argued that the Robinsons, Marshall Berry, and Bill Fine executed a written agreement providing Mr. Payne with the necessary authority to execute the Covenants on their behalf. Plaintiff claimed that the Robinsons intended for the Covenants to apply to the disputed property and that Defendant likewise intended for the Covenants to apply to his property as evidenced by his acceptance of the deed transferring ownership.

In support of its motion, Plaintiff filed affidavits and a statement of undisputed material facts. The Robinsons attested that they intended for certain restrictions to govern the property, that they authorized Mr. Payne to sign the Covenants on their behalf,

and that they were the only owners of the property when the Covenants were executed but that they intended to convey parcels of property to Mr. Berry and Mr. Fine. Plaintiff also included the document that purportedly authorized Mr. Payne to sign on behalf of the Robinsons. The document, undated but signed by the Robinsons, Mr. Fine, Mr. Berry, O. Lamar McDaniel, Jane F. McDaniel, and Mr. Payne, provided as follows:

> WHEREAS, WE THE OWNERS OF ALL LOTS IN WALNUT RUN (LINDA ROBINSON, HARVEY ROBINSON, BILL FINE, AND MARSHALL BERRY) DO HEREBY ACKNOWLEDGE THE WRITING AND APPROVAL OF THE WALNUT RUN RESTRICTIVE CO[V]ENANTS THAT WILL PROTECT OUR INTEREST ALONG WITH FUTURE OWNERS OF SUBDIVISION. WE ALSO ACKNOWLEDGE OUR PARTNERS IN THIS DEVELOPMENT IN WRITING THESE COVENANTS O. LAMAR MCDANIEL, JANE F. MCDANIEL, AND TERRY L. PAYNE. IT IS WITH ALL OUR APPROVAL THAT ANY OF THE BELOW LISTED AND SIGNED, MAY ACT ON OUR BEHALF IN CARRYING OUT ENFORCING AND SIGNING THIS DOCUMENT.

Mr. Payne attested, in pertinent part, that he, Mr. Berry and Mr. Fine were builders for the Subdivision and that he intended for certain restrictions to govern the subdivision. He claimed that the Robinsons authorized him to sign the Covenants on their behalf.

Following a hearing, the trial court granted summary judgment in favor of Plaintiff and denied Defendant's motion. In so holding, the trial court read the term Walnut Run as an unambiguous reference to the actual property owners as set forth in the outset of the Covenants and found that the record contained sufficient evidence to establish that Mr. Payne had the requisite authority to execute the Covenants on behalf of the property owners. The court alternatively held that the Covenants were enforceable as an equitable servitude. The court noted that even if Mr. Payne did not have the authority to bind the property, the restrictive covenants were incorporated into the later transfers of property from the Robinsons to Mr. Cavin and from Mr. Cavin to Defendant. The court ordered Defendant to comply with the Covenants and granted Plaintiff's request for attorney fees. This timely appeal followed.

## II. ISSUES

We consolidate and restate the issues on appeal as follows:

A. Whether the trial court erred in granting summary judgment.

B. Whether Plaintiff is entitled to attorney fees on appeal.

## III. STANDARD OF REVIEW

A motion for summary judgment is a question of law and we review it de novo with no presumption of correctness to the trial court's decision. *Rye v. Women's Care Ctr. Of Memphis*, 477 S.W.3d 235, 250 (Tenn. 2015). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits . . . show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. "The nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Rye*, 477 S.W.3d at 265 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). It must indicate specific facts in the record "which could lead a rational trier of fact to find in favor of the nonmoving party." *Rye*, 477 S.W.3d at 265.

## IV. DISCUSSION

### A.

"A property owner's right to own, use, and enjoy private property is a fundamental right." *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 474-75 (citations omitted). Accordingly, "Tennessee law does not favor restrictive covenants, because they are in derogation of the rights of free use and enjoyment of property." *Id.* (citations omitted). "Nevertheless, residential developments subject to restrictive covenants and governed by homeowners' associations . . . have rapidly proliferated in recent decades." *Id.* at 475 (citation omitted). "[T]he courts will uphold covenants running with the land where the intent of the parties to bind their remote successors can be determined by the language of the covenant and the circumstances of its making." *Hillis v. Powers*, 875 S.W.2d 273, 275 (Tenn. Ct. App. 1993). Such restrictive covenants are interpreted and enforced as contracts, with "[a]ny doubt concerning the applicability of a restrictive covenant construed against the restriction." *Hughes*, 387 S.W.3d at 481.

Defendant first argues that the court erred in granting summary judgment when the Covenants were executed by Mr. Payne, someone without any ownership interest in the

property. Plaintiff responds that this issue was not timely raised at the trial court level or adequately presented in the appellate brief. Plaintiff further argues that the record sufficiently established Mr. Payne's authority to execute the Covenants. Regardless of any potential for waiver, a review of the record reveals that Mr. Payne's authority to execute the Covenants on behalf of the Robinsons, the original property owners, was sufficiently established. Indeed, the record contained (1) a power of attorney executed by Mr. Robinson authorizing Mr. Payne to act in his stead concerning the Subdivision and (2) another document authorizing multiple individuals to act on behalf of the Robinsons in establishing the Subdivision and its restrictive covenants.

Defendant next argues that the court's interpretation of Walnut Run was flawed when the document does not contain a definition for the term or indicate that the property owners comprise Walnut Run. Plaintiff responds that the court did not err in interpreting the term Walnut Run as evidenced by the fact that Walnut Run was listed as the signatory. We agree that the court's interpretation of the term "Walnut Run" was flawed. The Covenants provide, in pertinent part, as follows:

> WHEREAS, WE HARVEY AND LINDA ROBINSON, BILL FINE, AND MARSHALL BERRY ARE THE OWNERS OF PROPERTY IN THE SECOND CIVIL DISTRICT OF HAMILTON COUNTY, TENNESSEE, KNOWN AS WALNUT RUN SUBDIVISION LOTS 1 THRU 80.

The term clearly and unambiguously refers to the property, not the owners of the property. Nevertheless, this distinction does not void the enforceability of the restrictive covenants at issue when the Covenants were executed by Mr. Payne, an authorized representative of Mr. Robinson, a property owner.

Defendant next argues that the Covenants are unenforceable because they did not contain language specifically binding future grantees. Plaintiff responds that this issue is waived because it was not timely presented to the trial court. Plaintiff alternatively argues that the intent to bind future grantees was evident in the wording of the Covenants and that it presented affidavits reinforcing that fact. We agree. Regardless of any potential for waiver, a clear reading of the Covenants reflects intent to bind future grantees as evidenced by the following language:

> WHEREAS IT IS OUR INTENT, PURPOSE, AND DESIRE TO INSURE THAT THE VARIOUS LOTS IN SAID SUBDIVISION ARE DEVELOPED INTO A RESIDENTIAL SECTION, AND FOR SUCH PURPOSES, THERE ARE IMPOSED ON THE VARIOUS LOTS, UNLESS SPECIFIED OTHERWISE, THE RESTRICTIVE COVENANTS AND CONDITIONS HEREINAFTER SETFORTH, WHICH SHALL BE

DEEMED TO BE A PART OF THE CONSIDERATION OF THE CONVEYING OF SAID LOTS, AND SAID RESTRICTIVE COVENANTS AND CONDITIONS SHALL RUN WITH THE LAND, THE SAME BEING FOR USE, PROTECTION, AND BENEFIT OF THE PRESENT AND FUTURE OWNERS OF LOTS IN SAID SUBDIVISION, AND ARE TO BE EFFECTIVE, WHETHER OR NOT THEY ARE SET FORTH SPECIFICALLY IN SUBSEQUENT CONVEYANCES.

\* \* \*

TERMS OF COVENANTS. THESE COVENANTS RUN WITH THE LAND AND ARE BINDING ON ALL PARTIES AND ALL PERSONS CLAIMING UNDER THEM FOR A PERIOD OF TWENTY-FIVE (25) YEARS FROM THE DATE THESE COVENANTS ARE RECORDED, AFTER WHICH TIME SAID COVENANTS SHALL BE AUTOMATICALLY EXTENDED FOR SUCCESSIVE TEN (10) YEAR PERIODS, UNLESS AN INSTRUMENT SIGNED BY A MAJORITY OF THEN OWNERS OF THE LOTS HAS BEEN RECORDED AGREEING TO CHANGE SAID COVENANTS IN WHOLE OR IN PART.

Defendant next argues that the court erred in applying the doctrines of estoppel by deed and equitable estoppel. Plaintiff responds that the court did not rely upon either doctrine in granting its motion for summary judgment. We agree with Plaintiff.

Finally, Defendant objects to the court's alternative ruling that the Covenants are enforceable as an equitable servitude. He claims that the ruling was in error because the party executing the servitude, Walnut Run, did not actually own an interest in the property. Plaintiff responds that the court did not err in its ruling. "For a covenant to bind remote grantees in equity, (1) it must "touch and concern" the land; (2) the original parties to the covenant must intend that it run with the land and bind remote grantees; and (3) the remote grantee must have had notice of the covenant." *Gambrell v. Nivens*, 275 S.W.3d 429, 437 (Tenn. Ct. App. 2008). Defendant does not take issue with any of these substantive elements. Instead, he again asserts that the Covenants were not executed by someone with a possessory interest in the property. We have already rejected this argument. Moreover, we agree with the trial court that the Covenants were also incorporated into the deeds transferring the property from the Robinsons to Mr. Cavin and from Mr. Cavin to Defendant.

With all of the above considerations in mind, we conclude that the court properly found that there were no genuine issues of material fact and that Plaintiff was entitled to an award of summary judgment.

B.

Plaintiff requests attorney fees on appeal pursuant to the terms of the Covenants. Tennessee follows the American Rule which provides that "litigants pay their own attorney's fees absent a statute or an agreement providing otherwise." *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000); *accord Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005). "Under the American [R]ule, a party in a civil action may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American [R]ule applies, allowing for recovery of such fees in a particular case." *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009) (citing *Taylor*, 158 S.W.3d at 359; *John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998)). An award of attorney fees on appeal is appropriate pursuant to the terms of the Covenants. We remand this case to the trial court for proceedings to determine the reasonable amount of such fees incurred on appeal.

## V.  CONCLUSION

The decision of the trial court is affirmed. The case is remanded for further proceedings. Costs of the appeal are taxed to the appellant, Jerry Wayne Wilkerson.

_____
JOHN W. McCLARTY, JUDGE