IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 15, 2024 Session

**SISKIN HOSPITAL FOR PHYSICAL REHABILITATION, INC. v.
DR. JAMES P. LITTLE**

**Appeal from the Chancery Court for Hamilton County
No. 20-0204  Jeffrey M. Atherton, Chancellor[1]**

_____

**No. E2023-01328-COA-R3-CV**

_____

This appeal concerns the trial court's dismissal of the defendant's claims for the return of funds held by the plaintiff hospital as untimely filed.  We reverse the dismissal, holding that the plaintiff was estopped from pleading the statute of limitations as a defense and that the plaintiff revived the obligation throughout its repeated negotiations with the defendant.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J. and THOMAS R. FRIERSON, II, joined.

Rebecca M. Little, Chattanooga, Tennessee, for the appellant, Dr. James P. Little.

Joseph R. White, Chattanooga, Tennessee, and Jonathan G. Rose, Washington, D.C., for the appellee, Siskin Hospital for Physical Rehabilitation, Inc.

**OPINION**

## I.     BACKGROUND

In 1989, James P. Little, M.D. was the president and owner of Occupational, Alternative & Rehabilitation Services ("OARS").  As president of OARS, Dr. Little entered into an agreement with Siskin Hospital for Physical Rehabilitation, Inc. ("Siskin") under which OARS provided staffing and other services to Siskin, including a physician to serve in a full-time physician capacity as Medical Director.  In accordance with the agreement, Dr. Little was appointed as the Medical Director.

_____

[1] Sitting by interchange.

As pertinent to this appeal, Dr. Little paid $7,500 per year from his Medical Director stipend into what he believed was a Section 457 nonqualified retirement plan, for a total amount of $37,500 paid between 1991 and 1996. He received audit statements from Siskin confirming the receipt of these funds.

On July 27, 2000, Siskin invoked the no-fault 180-day notice of termination of Dr. Little's 1989 agreement. In December 2000, Dr. Little filed a complaint against Siskin, alleging contract and tort claims. During the pendency of the litigation, Dr. Little began contacting Siskin to request the disbursement of his retirement contributions. Through counsel, Dr. Little demanded payment of the funds contributed, plus interest, by letter dated October 29, 2002, which provided as follows:

> This will confirm our telephone conversation today concerning Dr. Little's request for payment from [Siskin] in the amount of $37,500 plus interest. This is the amount held by [Siskin] pursuant to [the agreement] to establish a plan under Section 457 of the Internal Revenue Code for Dr. Little's benefit.
>
> As you may know, a Section 457 plan permits a tax-exempt organization, like [Siskin], to establish a deferred compensation arrangement for both employees and independent contractors. [Siskin] told Dr. Little that it had created such a plan for him and accepted payments to the plan[.] [Siskin's] records confirm such payments were remitted . . . in the amount of $37,500.
>
> When Dr. Little recently contacted [Siskin] about withdrawing the funds from the plan, he was told for the first time that the plan had never been created. This statement is contrary to [Siskin's] prior representations[.]
>
> I'm sure you appreciate the potential adverse tax implications to Dr. Little if [Siskin] failed to properly establish the 457 plan. Accordingly, Dr. Little's request for payment of the amount contributed to the plan, plus interest, but no damages is very reasonable.

Siskin again confirmed receipt of the funds but advised Dr. Little that his funds were not put into a Section 457 plan as he believed. However, Dr. Little did not amend his complaint to include his claim of retirement benefits.[2] Instead, Dr. Little sent a letter to then Senator Bill Frist, advising him of the current litigation and advising him of Siskin's failure to hold his funds in a 457 plan. The letter, dated September 20, 2003, provided, in pertinent part, as follows:

---

[2] His complaint was voluntarily dismissed at a later date.

Since leaving the hospital, I continue to experience flagrant violations of ethical and legal standards. On an unrelated topic (retirement funds held by the hospital), IRS regulations permit withdrawal of Section 457 retirement funds from an organization at time of departure. Due to financial problems caused by my loss of privileges several months ago, I requested transfer of my retirement funds to an individual IRA account . . . . VALIC, the firm responsible for current retirement funds, acknowledged the contributions, but intimated that the "hospital had not created a Section 457 plan." Furthermore, the VALIC representative indicated that the hospital would write a check for the exact amount of the contributions (which dated from the early nineties). However, [Siskin] was unwilling to pay interest [but] offered no solution for the fact that their actions had profound IRS implications.

Dr. Little also mentioned that he had been advised that he "may have passed the statute of limitations related to his retirement account." He opined that it "seemed odd" because he would not access his account until he reached retirement age. Senator Frist did not respond.

In December 2013, through counsel, Dr. Little sent a second demand letter. Siskin responded with a check for $37,500 on December 30, 2013. Dr. Little returned the check.

In July 2014, through counsel, Dr. Little reached out again to determine "the status of Siskin's position with respect to issuing payment to Dr. Little the full amount of principal and interest that he should have received in connection with his contributions to Siskin's Section 457 nonqualified retirement plan." He continued, "To the extent Siskin failed to ever establish a 457 plan altogether, Dr. Little requests that Siskin issue a check for the full amount of principal plus interest at a rate of 10% compounded annually from the date of his first contribution to the present date."

Siskin responded by letter dated, September 10, 2014, from President and CEO Carol Sim, who advised that she "would like to resolve this issue in a fair way." She continued,

I believe that Siskin Hospital should reimburse Dr. Little his contributions plus compounded interest that his contributions accrued while intermingled in the same account as Siskin Hospital's investments, at the same rate of return experienced by the Hospital.

To that end, I suggest Siskin Hospital issue a check to Dr. Little for the principal amount of $37,500 plus $47,135.64 for a total of $82,635.64.

The amount was not agreeable to Dr. Little, who, through counsel, sent a third demand letter in November 2018. Dr. Little acknowledged that the funds had most likely not been

placed into a 457 account as promised, resulting in unsavory tax implications for him. He suggested return of the funds, plus interest commensurate with the rate of return that his contributions would have achieved if the funds had been invested properly. The parties continued to exchange letters discussing the return of the funds and the applicable interest rate. One such letter, dated March 22, 2019, from Siskin to Dr. Little provided as follows:

> As previously explained to you by Siskin Hospital, the actual amount of interest earned on the $37,500 principal amount is calculated by looking to Siskin Hospital's investments with Ponder Investment Company. . . . [T]he actual interest calculation is based on Siskin Hospital's actual investment returns with Ponder Investment Company, which is where Dr. Little's retirement contributions would have been invested if co-mingled with Siskin Hospital's investment portfolio at the time of receipt. This results in an interest payment of approximately $47,197.28 (i.e., $84,697.28 total when combined with the $37,500 principal amount). There is simply no basis to use any other interest rate and it appears that Dr. Little is attempting to rely on impermissible hindsight in order to argue that a higher interest rate is required. Please also note that 457 plans are not required to provide participants with any particular interest rate or with any specific investment options.

The continued correspondence between the parties culminated in an unsuccessful final mediation on December 16, 2019.

On March 9, 2020, Siskin filed the instant action in the Chancery Court of Hamilton County, requesting a declaratory judgment establishing that any breach of contract claim filed by Dr. Little would be barred by the applicable statute of limitations. Siskin admitted that it accepted the contributions from Dr. Little and that it remained in possession of the contributions and interest earned thereon for the past 34 years. However, Siskin asserted that there was no Section 457 plan in existence for its employees until two years after Dr. Little's agreement was terminated. Siskin asserted that Dr. Little was aware of his potential breach of contract or similar claims as it related to his retirement contributions while prosecuting his original complaint but failed to include his claims in the ongoing litigation.

On April 9, 2020, Dr. Little responded by filing a motion to dismiss, arguing that the chancery court did not have subject matter jurisdiction over his deferred compensation retirement benefits governed by the Employee Retirement Income Security Act ("ERISA"). Accordingly, on April 24, 2020, Dr. Little filed an action against Siskin in the United States District Court for the Eastern District of Tennessee. Dr. Little asserted several claims under ERISA, along with alternative state law claims for breach of contract, promissory estoppel, and unjust enrichment. Siskin moved to dismiss, arguing that Dr. Little did not have standing to sue under ERISA because he was not an employee and that

any applicable statute of limitations had since expired.[3] The district court denied the motion to dismiss, finding that Dr. Little had pled sufficient facts to survive dismissal on the pleadings. The court deferred ruling on the state law claims and ordered further discovery on the issue of whether Dr. Little was an employee pursuant to ERISA.

Following a hearing, the district court found that the evidence in the record only established that Dr. Little "believed" he was paying into a 457 deferred compensation plan but that he did not establish the actual existence of such a plan. The court noted that ERISA jurisprudence emphasizes the necessity of a written plan, which was not produced in the record for the court's consideration. The court concluded,

> There is no doubt that there are claims that need to be resolved with respect to the money that [Dr. Little] paid to Siskin believing he was contributing to a 457 plan. Yet there is no ERISA claim that can possibly be resolved in this Court – there is no plan, no plan administrator, and no administrative record. The Court does not imply that this is due to some fault of [Dr. Little] or that he does not have potentially meritorious claims against Siskin related to the money he contributed and what he was told about those funds. However, because there is no written plan before the Court, there is nothing for the Court to enforce. Accordingly, [Dr. Little's] ERISA claims fail because, while [Dr. Little] has shown some level of objectionable conduct on Siskin's part, he cannot prove the existence of an ERISA plan, an essential element to his claims.

The court granted judgment in Siskin's favor and dismissed the ERISA claims with prejudice. Noting that there was no longer a federal question conferring original jurisdiction over the action, the court declined to exercise supplemental jurisdiction to consider the state claims and dismissed them without prejudice.

Back in chancery court, Dr. Little filed a counter-complaint against Siskin on November 21, 2021, asserting a myriad of claims sounding in contract and unjust enrichment. Dr. Little asserted that Siskin provided audit statements for a 457 plan that did not exist and fraudulently concealed its noncompliance with federal regulations all while wrongfully retaining his contributions. Dr. Little claimed that Siskin assured him that his payments would be returned with interest before ultimately filing the instant action.

Siskin responded with a motion to dismiss on April 4, 2022, requesting a finding that any claims regarding Dr. Little's contributions over 20 years ago were time-barred. The trial court denied the motion, holding that there were genuine issues of material fact in dispute concerning the expiration of the applicable statute of limitations.

---

[3]The chancery court stayed its proceedings, pending the resolution of Dr. Little's federal claims.

The parties proceeded to a bench trial solely on the issue of the running of the statute of limitations on the claims regarding Dr. Little's alleged deferred compensation contributions. Dr. Little testified concerning the history of his payments, receipt of audit statements, and attempts to recoup his losses from Siskin throughout the years.

Following the hearing, the court dismissed Dr. Little's breach of contract claims as untimely filed, finding that the undisputed facts demonstrated that he was put on inquiry notice that his contributed funds were not being held as promised, that he was not enrolled as a participant in a Section 457 plan, and that Siskin did not intend to provide him with 457 retirement benefits decades before this action commenced. The court also found that the unjust enrichment/conversion claims were filed beyond the applicable three-year statute of limitations. This appeal followed the denial of post-trial motions.

## II. ISSUES

Dr. Little raised a myriad of issues that we summarize into the following categories:

(A)     Whether the court erred in denying his request to submit the issue of the running of the statute of limitations to a jury.

(B)     Whether the court erred in its dismissal of the claims as untimely.

(C)     Whether Dr. Little is entitled to attorney fees on appeal.

## III. STANDARD OF REVIEW

Our review of the trial court's decision is de novo upon the record, and the trial court's factual findings are presumed correct, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Alexander v. Inman*, 974 S.W.2d 689, 692 (Tenn. 1998). The trial court's conclusions of law are subject to de novo review, with no presumption of correctness. *S. Constructors, Inc. v. Loudon Cnty. Bd. of Ed.*, 58 S.W.3d 706, 710 (Tenn. 2001); *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

"In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01. If the trial court makes the required findings of fact, appellate courts review the trial court's factual findings de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citing Tenn. R. App. P. 13(d)); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013). "Appellate courts will not re-evaluate a trial judge's assessment of witness

credibility absent clear and convincing evidence to the contrary." *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

## IV.  DISCUSSION

### A.

As a threshold issue, Dr. Little argues that the court erred by failing to submit the issue of the running of the statute of limitations to a jury.  Tennessee Code Annotated section 21-1-103 provides as follows:

> Either party to a suit in chancery is entitled, upon application, to a jury to try and determine any material fact in dispute, save in cases involving complicated accounting, as to such accounting and those elsewhere excepted by law or by this code, and all the issues of fact in any proper cases, shall be submitted to one (1) jury.

Once a demand for a jury has been made, Rule 38.05 of the Tennessee Rules of Civil Procedures provides that the demand "may not be withdrawn without the consent of all parties."  This court has noted that "the statutory right extends only to the determination of any material facts in dispute and that the court may deny a request for a jury in 'cases of such a complicated and intricate nature involving mixed questions of law and fact not suitable for solution by a jury.'" *Sasser v. Averitt Exp., Inc.*, 839 S.W.2d 422, 434 (Tenn. Ct. App. 1992) (quoting *Moore v. Mitchell*, 205 Tenn. 591, 597, 329 S.W.2d 821, 824 (1959)).  Accordingly, the chancery court has discretion in determining whether a bench trial or submission to the jury is warranted depending on the facts and circumstances of the case. *See generally In re Estate of Thompson*, 952 S.W.2d 429, 432 (Tenn. Ct. App. 1997) (providing that similar discretion should be afforded to the probate courts).

Here, the record reflects that Dr. Little made his first jury request in his counter-complaint.  Following its dismissal of Siskin's motion for summary judgment, the trial court bifurcated the statute of limitations issue and set the matter for a bench trial.  This order is absent from the record.  The parties proceeded through the bench trial, after which Dr. Little requested that the statute of limitations issue be submitted to a jury in his closing arguments.  Siskin asserts on appeal that Dr. Little waived review of the issue when he failed to object before the court proceeded with the bench trial.

The record before this court is simply unclear as to when and why the court determined to proceed with the bench trial on the issue of the running of the statute of limitations when a jury request had been made.  Additionally, the Rules of Appellate Procedure provide that this court is not required to grant relief with respect to an alleged

error of the trial court if the complaining party "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a). Apart from his second request in his closing argument after the proceedings had concluded, Dr. Little does not cite to any place in the record where he objected to the bifurcation of the proceedings and a bench trial on the issue of the statute of limitations. He cannot now complain that the trial court's action was erroneous based upon this issue. *See, e.g.*, *Ford v. Ford*, No. E2005-01772-COA-R3-CV, 2006 WL 842890, at *2 (Tenn. Ct. App. Mar. 30, 2006) ("When a trial court makes an [alleged] error [] an aggrieved party cannot remain silent, 'tuck' the error away in the party's hip pocket, and then use it on appeal to his or her advantage."). Had Dr. Little made such an argument, he, like every appellant in every case, was tasked with preparing a record for this court's review that conveys "a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). This issue is waived.

B.

Dr. Little filed his counter-complaint for breach of contract and additional common law claims on November 21, 2021. His breach of contract claim was subject to dismissal if his claim accrued prior to November 21, 2015. *See* Tennessee Code Annotated section 28-3-109(a)(3) (providing that causes of actions based upon contract must be commenced within six years after the cause of action accrued). His common law claims are properly categorized as claims for injuries to personal property that were subject to dismissal if the claims accrued prior to November 21, 2018. *See* Tenn. Code Ann. § 28-3-105 (providing that actions for injuries to personal property "shall be commenced within [three] years from the accruing of the cause of action").

The discovery rule is applicable in determining when the statute of limitations expired. Our Supreme Court explained its interpretation of the rule as follows:

> [T]he discovery rule does not delay the accrual of a cause of action and the commencement of the statute of limitations until the plaintiff knows the full extent of the damages . . . or until the plaintiff knows the specific type of legal claim it has. The discovery rule is not intended to permit a plaintiff to delay filing suit until the discovery of all the facts that affect the merits of his or her claim.
>
> Under the current discovery rule, a cause of action accrues and the statute of limitations begins to run not only when the plaintiff has actual knowledge of a claim, but also when the plaintiff has actual knowledge of facts sufficient to put a reasonable person on notice that he [or she] has suffered an injury as a result of wrongful conduct. This latter circumstance is variously referred to as constructive notice or inquiry notice. Quoting the Iowa Supreme Court,

we have explained that inquiry notice charges a plaintiff with knowledge of those facts that a reasonable investigation would have disclosed . . . . [O]nce a plaintiff gains information sufficient to alert a reasonable person of the need to investigate the injury, the limitation period begins to run.

*Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 459 (Tenn. 2012) (internal quotations and footnotes omitted). "It is not required that the plaintiff actually know that the injury constitutes a breach of the appropriate legal standard in order to discover that he has a 'right of action.'" *Carvell v. Bottoms*, 900 S.W.2d 23, 29 (quoting *Roe v. Jefferson*, 875 S.W.2d 653, 658 (Tenn. 1994)). "[T]he plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct." *Id.*

The trial court found that the statute of limitations on the breach of contract claim expired in 2019, at the latest, which was six years after Siskin's offer of payment without interest in December 2013. Dr. Little asserts that the trial court erred in dismissing the action as untimely when Siskin did not indicate a clear intent to refuse payment until its filing of the declaratory judgment action on March 9, 2020. He argues that the court failed to consider relevant tolling doctrines, e.g., equitable estoppel and revival, based upon Siskin's repeated assurances that his funds were safely held and would be returned.

Our Supreme Court addressed the doctrine of equitable estoppel in *Redwing*. The Court stated, in pertinent part,

In the context of a defense predicated on a statute of limitations, the doctrine of equitable estoppel tolls the running of the statute of limitations when the defendant has misled the plaintiff into failing to file suit within the statutory limitations period. When the doctrine of equitable estoppel is applicable, it prevents a defendant from asserting what could be an otherwise valid statute of limitations defense.

The party invoking the doctrine of equitable estoppel has the burden of proof. Thus, whenever a defendant has made out a prima facie statute of limitations defense, the plaintiff must demonstrate that the defendant induced him or her to put off filing suit by identifying specific promises, inducements, suggestions, representations, assurances, or other similar conduct by the defendant that the defendant knew, or reasonably should have known, would induce the plaintiff to delay filing suit.

* * *

Plaintiffs asserting equitable estoppel must have acted diligently in pursuing their claims both before and after the defendant induced them to refrain from

- 9 -

filing suit. The statute of limitations is tolled for the period during which the defendant misled the plaintiff. The plaintiff must demonstrate that suit was timely filed after the plaintiff knew or, in the exercise of reasonable diligence, should have known that the conduct giving rise to the equitable estoppel claim had ceased to be operational.

*Redwing*, 363 S.W.3d at 460 (citations and footnote omitted). "Similarly, a defendant may revive a plaintiff's remedy that had been barred by the running of a statute of limitations either by expressly promising to pay the debt or by acknowledging the debt and expressing a willingness to pay it." *Ingram v. Earthman*, 993 S.W.2d 611, 633–34 (Tenn. Ct. App. 1988) (internal citations and footnotes omitted). In such cases,

> The expression of willingness to pay the debt that must accompany the acknowledgment of the debt may be implied from the defendant's words or acts but . . . the words or acts must amount to a recognition of the continuing obligation. Persons who successfully establish the revival exception to a statute of limitations defense must file suit with the applicable limitations period measured from when the conduct constituting the revival occurred.

*Id.* at 634.

Here, Dr. Little identified several demands of payment that were met by Siskin's acknowledgment of the debt and offers of repayment. In December 2013, Siskin responded to Dr. Little's demand for payment with a check in the amount of $37,500. In September 2014, Siskin's President and CEO advised by letter that she "would like to resolve this issue in a fair way" and offered payment of the original amount, plus interest, for a total amount of $82,635.64. Again, in April 2019, Siskin suggested that a fair payment would consist of "the actual amount of interest earned on the $37,500 principal amount," for a new total payment of $84,697.28. These offers occurred before the parties participated in their last mediation in December 2019. Siskin likewise assured Dr. Little throughout the pertinent time period that his funds were invested and accruing interest. Dr. Little promptly filed suit when Siskin filed its declaratory judgment action indicating an intent to refuse payment altogether on the obligation. Relative to the revival of the debt obligation, Siskin offered assurances that it would repay the debt with interest as late as April 2019. The only issue between the parties related to the amount of interest owed on the funds. Accordingly, we conclude that the trial court erred in determining that Dr. Little's claims were untimely.

C.

Tennessee follows the American Rule which provides that "litigants pay their own attorney[ ] fees absent a statute or an agreement providing otherwise." *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000); *accord Taylor v. Fezell*,

- 10 -

158 S.W.3d 352, 359 (Tenn. 2005). Dr. Little does not cite to a statute or agreement in support of his request for attorney fees on appeal. We also cannot say that the instant appeal was frivolous. Tenn. Code Ann. § 27-1-122 (providing the reviewing court with the authority to award attorney fees when it appears that the appeal was frivolous or taken solely for delay). We respectfully deny the request for attorney fees on appeal.

## V.     CONCLUSION

For the reasons stated above, we reverse the decision of the trial court. The case is remanded for further proceedings. Costs of the appeal are taxed to the appellee, Siskin Hospital for Physical Rehabilitation, Inc.

_____
JOHN W. MCCLARTY, JUDGE